No. 5482.                                                   30    255
                                                          112    39
E. H. MURRELL vs. MRS. SERENA LION AND HUSBAND.

Any doubt as to the intentions of the parties to a contract of lease, arising out of uncertain terms of the contract, will be construed in favor of the lessee. It is the business of the lessor to have the agreement expressed in clear and certain terms.

Where the contract of lease leaves it doubtful whether the lease is to terminate on the first or the thirty-first of a certain month, the lessee may elect which of the two dates it shall end on.

Where the condition of a contract of lease is that if either party desires to terminate the lease he must give notice of his intent *one month* before the first of the succeeding October, and it happens that the first of the succeeding September falls on Sunday, notice served tne second of September will satisfy the condition.

Where a lessee continues in possession after the expiration of the lease, without a renewal of the contract, there is a tacit reconduction of the lease by the month, terminable on fifteen days notice.

APPEAL from the Fifth District Court, parish of Orleans. *Cullom,* J.

*Geo. L. Bright* for plaintiff and appellee.

*B. F. Jonas* for defendant and appellant.

, The opinion of the court was delivered by

MARR, J.   Barrett, agent for Murrell, by writing, dated the twenty-seventh of October, 1871, leased to Mrs. Lion the store No. 31 Natchez street, "for and during the full space and term of twelve months, to commence on the first day of October, 1871, and to cease on the thirty-first day of October, 1872." The rent for the entire term was $1260, payable in installments of $105 at the end of each and every month, "any month of which not being punctually paid the balance of this lease thereby becomes due."

It was also stipulated in this writing that, "If neither party to this lease does not give written notice, at least one month previous to the first of October, 1872, of their intention not to renew the same, then this lease will be considered as continued as in full force, as if renewed yearly."

The first of September, 1872, fell on Sunday ; and on Monday, the second, Mrs. Lion wrote to Barrett that she would vacate the premises, without saying at what time, "unless you lower the rent ;" and she requested an answer.

On the first of October she wrote to Barrett again, giving him, formal notice that "your store, No. 31 Natchez street, will be vacant on the first of November."

On the fourteenth of October Barrett acknowledged receipt of these two communications ; and he added that the notice did not come in time, and, therefore, "you are bound for another year's rent."

On the thirtieth of October Mrs. Lion paid the rent for that month; and on the second of November Barrett received the keys from Lion and took them away with him. On the same day he brought this suit to recover, under the contract, $1260, rent for one year from the first of October, 1872 ; and he caused the furniture and effects, which had been removed from No. 31 to an adjoining store, to be provisionally seized.

By similar writing, dated twenty-sixth of December, 1872, Barrett leased the store No. 31 to Gauche, "for and during the full space and term of thirty-six months, to commence on the first day of October, 1872, and to cease on the thirty-first day of September, 1875." It is remarkable that this writing contains the same clause with respect to notice and renewal as the lease to Mrs. Lion, in the identical words, the only difference being that the date, 1875, is substituted for 1872.

Gauche testifies that he got the keys on the second of December, but that he did not pay rent "until the fifteenth of December."

Clarence Lion says he called on Barrett on the fourth of September and asked if he had received that note. Barrett said he had. Clarence

Murrell vs. Lion.

asked if he answered it. He said, "No! Tell your father to move whenever he likes."

There is nothing in the record to contradict this. Barrett, when asked by plaintiff's counsel, "Did you ever agree to renounce any of the conditions of the lease," answered: "Never, sir." Again, being asked, "Did you ever agree that Mrs. Lion might move out and that there would be no claim upon her?" he answered: "Never."

He did not state, and he was not asked to state, whether he had said to Clarence, "Tell your father to move whenever he likes." Clarence went to Barrett on the fourth of September for a purpose. It was to ascertain whether Barrett had received the note of the second of September, and whether he had answered it; and what Barrett said to him on that occasion no doubt fixed itself in his mind. It informed him of the material facts that Barrett had received the note; that he did not intend to lower the rent; and that he was willing that Mrs. Lion should terminate her relation to him as lessee if she chose to do so. The uncontradicted statement of Clarence must be taken as true, although it may also be true that Barrett never did agree, specifically, "to renounce any of the conditions of the lease;" or that Mrs. Lion might move out "and that there would be no claim against her."

We are inclined to consider the clause as to notice and renewal in the lease to Mrs. Lion void for want of certainty. Did the parties intend to require the notice to be given one month previous to the first of October, or did they really intend that it should be one month previous to the thirty-first of October?` The lease was for twelve months; but it was to begin on the first of October and to end on the thirty-first of October. Was the thirty-first of October, in reference to the end of the term, written in error; or was the first of October, in reference to the notice, really intended to be the thirty-first of October?

The lease is to be considered as *continued:* Continued for what length of time? *Renewed yearly* implies more than a single renewal. It was the business of the lessor to explain himself fully; and to show precisely the meaning and extent of the contract which he is seeking to enforce. Does the clause mean, necessarily, that the lease shall be considered as continued for one year only, as if renewed once for a single term only; or is it not equally susceptible of the interpretation that it shall continue for an indefinite number of years, as if renewed at the end of each term of one year, until it shall be terminated in some manner?

The notice contemplated must have had reference to the end of the term, as it manifestly had in the similar clause in the lease to Gauche. The lease to Mrs. Lion was declared to be for twelve months; but in terms equally explicit, the commencement was declared to be the first

-of October, 1871, and the end the thirty-first of October, 1872. Was it a lease for twelve months, or a lease for thirteen months?

The lessor might well desire to know a month before the termina-tion of the lease whether the lessee intended to continue the lease for another year, so that he might secure another tenant; and that is what is stipulated in the lease to Gauche. On the hypothesis that both par-ties understood and intended that the lease to Mrs. Lion was to ter-minate on.the first of October, and not on the thirty-first, the notice might have been given at any hour before midnight of Saturday, the thirty-first of August, 1872. As Sunday is a *dies non juridicus*, notice given Saturday night or Sunday would have accomplished no more than like notice given on Monday; and, in point of fact, the notice given on Monday, the second day of September, included all the *dies utiles* of the month previous to the first of October.

The verbal answer to Clarence was an acknowledgment of the receipt of the notice of the second of September; it was also the refusal of Barrett to lower the rent, and the unequivocal expression of his con-sent that Mrs. Lion should terminate her relations to him as lessee by vacating the premises as she informed him she would do.

Mrs. Lion might well have been in doubt as to whether she had the right to remove and to stop the rent before the thirty-first of October; and this may account for her failure to state, in the note of the second of September, at what time she intended to vacate the store. She and Barrett both understood, however, that she meant to vacate at the end of the term, whenever that might be, if Barrett would not consent to reduce the rent. It was not a forced construction of the lease to inter-pret it as continuing until the thirty-first of October; and Mrs. Lion chose to remain in possession and to pay the rent up to that date, as she might well have supposed she was bound to do; but she took care to give formal notice, on the first of October, that the store would be vacant on the first of November. On the hypothesis that the first notice was sufficient, and that the lease ceased on the first of October, the holding over for the month of October was simply a reconduction by the month, terminable on giving fifteen days notice. R. C. C. 2686.

In making the lease to Gauche for a term of thirty-six months, beginning on the first of October, 1872, and ending on the thirty-first of September, 1875, Barrett proceeded on the assumption that the lease to Mrs. Lion had terminated on the first of October, although she contin-ued to occupy and paid the rent, at the rate stipulated, until the end of October.

Our conclusion is that the lease to Mrs. Lion was not renewed, and that she was not liable for rent after the thirty-first of October, 1872.

The judgment of the District Court from which defendants appealed,

Murrell vs. Lion.

was in favor of plaintiff, for $1260, with five per cent interest from judicial demand, second of November, 1872, that is for one year's rent, from the first of October, 1872. The check to Barrett's order, and his receipt of the thirtieth of October, 1872, for the rent for that month, offered in evidence, must have escaped the notice of the district judge, as well as the lease to Gauche for thirty-six months, at the rate of $1000 for the first year, and $1100 for each of the two succeeding years. We think the judgment should have been in favor of defendants.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and reversed ; and that there be judgment in favor of defendants, appellants, rejecting the demand of plaintiff, appellee, with costs in both courts.