and paid the rent for those years, is not disputed.

It is well settled that a tenant cannot be permitted to dispute his lessor's title as long as he continues in possession. Hanson v. Allen, 37 La. Ann. 732.

In Rector v. Gibbon, 111 U. S. 284, 4 Sup. Ct. 608, 28 L. Ed. 427, the court said:

"The contract of lease not only implies a recognition of his title, but a promise to surrender the possession to him on the termination of the lease. They, therefore, while retaining possession, are estopped to deny his rights."

It follows that plaintiff, being in possession as lessee when this suit was filed, is estopped to deny his lessor's title and rights of possession.

We are constrained to dismiss this suit as premature, and not maintainable, under the state of facts which existed at the time it was instituted. We do so with less hesitation because the record does not advise us of the result of the two appeals taken by plaintiff from the judgments in favor of Blackman as lessor, which we consider as important factors in the case.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be reversed, and it is now ordered that this suit be dismissed as in case of nonsuit; plaintiff to pay costs of both courts.

---

(36 South. 216.)

No. 15,053.

WERLEIN v. JANSSEN.*

(Jan. 18, 1904.)

LEASE—CONSTRUCTION—RENEWAL.

1. Plaintiff and defendant entered into a lease for 24 months, commencing October 1, 1900, and ending September 30, 1902. The act of lease recited, "The lessee agrees to notify the lessor, or her agent in writing, on or before

*Rehearing denied March 28, 1904.

August 1st, 1902, it being understood and agreed that lessee has a privilege at the expiration of the lease, of renewal for three years at the same rental, in the event that lessor does not wish to occupy same for her own purpose."

On July 29, 1902, the lessee notified the lessor that he availed himself of said privilege of renewal for three years, and lessor received the notice on the 30th of July.

On September 13, 1902, the lessor notified the lessee that she desired to occupy the premises for her own purposes on September 30, 1902. In the meantime, on August 13, 1902, she had written the lessee that she was considering, but had not definitely decided, whether she would need the premises, and suggested an interview. Several interviews were held, at which there were suggestions for a further lease for one year, but they resulted in nothing; and on the 13th of September, 1902, the lessor gave notice of her final decision to lessee. The latter refused at the expiration of the lease to vacate; claiming that by reason of the lessor's not having, on his informing her on July 30, 1902, that he had availed himself of his privilege of renewal for three years, announced to him on or before the 1st of August that she wished to occupy the premises herself, a lease for three years at the same rental had been ipso facto created between the parties. *Held*, that this claim was not well founded. *Held*, also, that it was not essential to the existence of lessor's right of declining to enter into a renewal of lease that her intended use of the property should have been an immediate use, nor that her intended use should have been a use exclusively to herself.

Monroe, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by B. P. Werlein against H. J. Janssen. Judgment for plaintiff, and defendant appeals. Affirmed.

Zengel, Thomas & Suthon, for appellant. Merrick & Lewis and Philip Gensler, Jr., for appellee.

Statement of the Case.

NICHOLLS, C. J. Plaintiff alleged that she was the owner of the property Nos. 718–720 Canal street, between St. Charles and Carondelet streets, in the city of New Orleans, consisting of a three-story brick building and other improvements.

That on June 1, 1900, petitioner leased said building to H. J. Janssen for 24 months from

October 1, 1900, and ending September 30, 1902, at $240 per month, payable on the 1st day of each and every month, as evidenced by 24 rent notes made by said lessee to the order of himself.

That it was understood and agreed, among other things, that lessee had a privilege at the expiration of said lease of renewal for three years at the same rental, in the event that lessor did not wish to occupy the premises for her own purposes.

All of which, together with the remaining terms of said lease, would "more fully and at large appear by reference to said lease, annexed to and made part of this petition for greater certainty."

That under the terms of said lease, and in accordance therewith, before the expiration of the 24 months, and in the month of August, 1902, petitioner, through her agent, Philip Werlein, who, petitioner showed, had charge of her affairs, and full power to act for her, notified said H. J. Janssen that lessor desired to occupy said premises for her own purpose. That, notwithstanding said notice, defendant had remained upon said premises, refusing to leave and vacate the same as requested.

That she had repeatedly, in January, February, March, and April, 1903, among other occasions, served upon defendant written notices to leave and vacate said premises as required by law, and said defendant refused to vacate, and that a notice was served upon defendant on April 15th, in writing, in the manner and form required by law. That in case there had been since September 30, 1903, a tacit reconduction of the lease by the month, such lease by reconduction terminated April 30, 1903, but said Janssen refused and still refuses to vacate said premises. That petitioner had received no notes and no security for the fulfillment of any alleged renewal, and was entitled to the immediate possession of her said property.

In view of the premises, she prayed that defendant be adjudged to forthwith vacate

112 LA.—2

the premises described, and deliver the same to her.

Defendant first excepted that plaintiff's petition disclosed no cause of action.

Under reservation of this exception, he answered, pleading first a general denial. He admitted that on June 1, 1900, he entered into a lease with the plaintiff of the lower floor of the premises known as Nos. 718–720 Canal street for the term of two years, beginning on October 1, 1900, and ending September 30, 1902, at a monthly rent of $240.

That, under the terms of said lease, plaintiff gave him the fixed and vested right to renew the said lease at its expiration for a further period of three years, in the event that lessor did not wish to occupy the premises for her own purposes.

He averred that, under the terms of the lease, it was required that, in the event he desired to renew the lease as aforesaid, he should furnish notice of his intention so to do before the 1st day of August, 1902, and that, in accordance therewith, on the 30th day of July, 1902, he did serve the plaintiff with a notice to the effect that he did desire to renew the lease for the further period set forth therein. For further answer, defendant denied that plaintiff ever notified him in the month of August, 1902, that she desired to occupy said premises for her own purpose, and specially showed that she did not notify defendant before the 1st day of August, 1902.

For further answer, defendant showed that at all times since July 30, 1902, he had been willing and ready to comply with all the terms of his agreement with petitioner.

That he had punctually paid the rent stipulated in said lease up to the present time, and had not violated in any particular any of its terms and conditions.

For further answer, defendant showed that, under the said lease, the only thing required of him therein, to reserve and receive the renewal of said lease for a further period of three years, was the notice of his intention to

do so, which he served upon petitioner as above set forth, and subsequently recorded same in the conveyance office of this parish.

Defendant further averred that, under the renewal as above set forth, he was entitled to retain the possession of the said premises until the expiration of three years from September 30, 1902.

He prayed that there be judgment in his favor and against plaintiff, decreeing him to have a lease of the lower floor of the premises 718–720 Canal street for a term of three years, beginning on October 1, 1902, and ending on September 30, 1905, and the possession thereof, and ordering defendant to furnish to plaintiff his notes representing the rent thereof, and there be further judgment dismissing plaintiff's suit at her costs, and for general relief.

The district court rendered judgment in favor of plaintiff against the defendant, ordering and decreeing defendant to forthwith vacate the premises Nos. 718–720 Canal street, and to deliver the same into the possession of the plaintiff.

The court assigned the following reasons for its judgment:

"On June 1, 1900, plaintiff leased to defendant, by written contract of lease, with rent notes and personal security, the premises 718 Canal street, at $240 per month, from 1st October, 1900, to 30th September, 1902.

"There was this clause in the act of lease: 'The Lessee agrees to notify the lessor, or her Agent in writing on or before Aug., 1902, [then there are words printed which are erased, and the sentence abruptly ends, and then follows, in writing] it being understood and agreed that Lessee has a privilege at the expiration of this lease, of a renewal for 3 years at the same rental, in the event that Lessor does not wish to occupy same, for her own purpose.'

"The lower floor was to be occupied as a first-class restaurant. All conditions of the contract were complied with by both parties,

and the only contest is as to defendant's right of renewal for three years from 1st October, 1902.

"On July 29, 1902, defendant wrote to plaintiff that he availed himself of said privilege of renewal for three years, and plaintiff received the written notice July 30th.

"Plaintiff did not respond at once, but on August 13th wrote to defendant to the effect that she had not definitely decided whether she would require the building for her own purpose, at date of receipt of defendant's notice, and that she was still considering the matter, and asked for an interview, suggesting it would be of mutual advantage.

"There were interviews and suggestions of a further lease for one year, but no result was reached, and on September 13, 1902, plaintiff gave written notice that she desired to occupy the premises for her own purposes at expiration of the lease on September 30th.

"The defendant did not then, or at any other time since, offer to renew for three years, by tendering an act of lease, and rent notes for $240 each, with personal security, in accordance with the terms of the original lease, and therefore did not put plaintiff in default, as his notice of his intention to renew, on July 30, 1902, had been met by the letter of September 13th of plaintiff, stating her intention to occupy the premises for her own use, and by the prior letter of August 13th, and verbal statements that she was considering such occupancy by herself.

"Under these conditions of fact, there was, under our law, no renewal for three years, and tacit reconduction only operated a lease by the month after September 30, 1902.

"After that date defendant paid the rent due for each month, plaintiff receiving each payment as 'overdue time on the old lease.'

"Plaintiff gave defendant notice to vacate from time to time, but defendant did not vacate, and finally notice was given seasonably. Defendant failing to vacate, plaintiff brought this ejectment suit.

"When the case was argued, it seemed to me that all negotiations or notices to renew, or matters of default of either party, were referable to August 1, 1902, but defendant at that date had only notified plaintiff of his desire to renew. He did not then put her in default by the offer to sign a three-years lease, with rent notes, with personal security, nor has he ever done so at any time, and he was apprised of plaintiff's unwillingness to renew, because of her probable purpose to use the building for her own business, at least by August 13th, and on September 13th was notified that her intention to so occupy it was fixed, and that she would not renew, and thereafter he did not tender the lease and rent notes, with security, nor in any wise put her in default.

"The contract recites that lessee has a privilege, at expiration of this lease 'to renew for three years,' etc., in the event that lessor does not wish to occupy it for her own purpose. The expiration of the lease, September 30, 1902, seems to be the time fixed for election to renew, vel non, with, therefore, the right of either to refuse to renew before that time.

"The contract does not say that defendant's notice on or before August 1, 1902, should operate as a three-years renewal of the lease. On the contrary, it recites this privilege as being subordinate to plaintiff's wish to occupy it for her own purpose, and it does not say that she was bound to give him notice of her wish in this respect by August 1, or at any other time, as he did not put her in default by the tender of a lease signed by him, and rent notes and personal security, corresponding with the lease of June 1, 1900, under which he held. Plaintiff's letter of September 13th ended the discussion, so far as concerned the renewal for three years, and ended defendant's claim of privilege of renewal.

"As he could not compel plaintiff to sign a new lease, his remedy was to put her in default, hold her in damages in the event of her not occupying the building for her own purposes, but this he did not do; and, as the owner desiring to use the property for her own purposes, plaintiff has the right of possession, because defendant's lease has expired, and he has been notified legally to vacate."

Defendant appealed.

## Opinion.

The contract of lease of the property described between the parties was for 24 months, commencing on the 1st day of October, 1900, and ending on the 30th of September, 1902, at the rate of $240 per month, as evidenced by 24 rent notes. After reciting that fact, the act of lease continued as follows: "The lessee agrees to notify the lessor or her agent in writing on or before the First day of August 1902. It being understood and agreed that lessee has a privilege at the expiration of the lease of a renewal for 3 years at the same rental, in the event that lessor does not wish to occupy same for her own purpose." Just before the closing of the act appears the following clause: "And now comes C. W. Theurer and C. H. P. Janssen who hereby make themselves party to this contract of lease and obligate themselves, C. W. Theurer, 6 mos. from Oct. 1, 1900, C. H. P. Janssen, 6 mos. from April 1, 1901, with the lessee in solido for the faithful compliance with all the conditions on the part of the lessee to be performed and lessee agrees to furnish satisfactory security at expiration of first year for second year."

The opinion of the district court states the facts of the case.

Defendant's position is stated in the syllabus of his counsel's brief as follows:

"The right of renewal contained in a written contract of lease is a substantial part of the contract. Mossy v. Mead, 2 La. 161. Any doubt as to the intention of the parties

to a contract of lease, arising out of uncertain terms of the contract, will be construed in favor of the lessee. It is the business of the lessor to have the agreement expressed in clear and certain terms. Murrell v. Lion, 30 La. Ann. 258.

"A lease is a commutative contract. A stipulation requiring the lessee to exercise his right of renewal by notice to the lessor on a fixed day necessarily imposes upon the lessor the obligation to decide on the same date whether he will exercise his right to a refusal. The obligation is bilateral. The lessor in such a case cannot keep the lessee in suspense.

"In this case it was incumbent upon the lessee to exercise his right of renewal on or before the 1st of August, 1902. He did so by written notice on July 30, 1902. Between July 30, 1902, and August 1, 1902, the lessor remained inactive, and did nothing to indicate that she objected to the renewal. On August 1, 1902, the rights of both parties on the question of the renewal became fixed and immutable. A notice subsequent to August 1, 1902, served by the lessor upon the lessee, stating that she objected to the renewal, came too late, because, under the terms of the contract, August 1, 1902, was the limit of time in which the lessee had to act. The extension clause in a lease is reciprocal in character, and a time limit therein contained is as binding upon the lessor as it is upon the lessee. The lease in question provides for a renewal at the same rental.

"The extension did not provide for security, nor did the original lease; security being exacted only for the first year. It was not required for the second year. There is nothing to indicate that it was required as a condition precedent to a renewal. If she thought so, it was her duty to have put defendant upon his guard, and thus to have given him an opportunity either to accept or reject his construction of her rights. Her

silence before August 1, 1902, implied acquiescence. The doctrine that doubts and ambiguities are construed against the lessor puts the plaintiff out of court.

"Subsequent to August 1, 1902, the lessor pretended to want the property for her own purpose. Her position was that never at any time would she have consented to a renewal, but that she wanted the property for her own use. This position she assumed after August 1, 1902, the crucial time at which the right of renewal became fixed.

"Her position then taken was an active violation of her contract, and a repudiation of defendant's right to renew at any time or under any circumstances. It necessarily involved a rejection of any tender that might be made, if a tender was necessary, which is denied. Under such circumstances, the law does not require a vain thing, and no tender was required, even if it were ordinarily necessary.

"When the lessee exercises a right of renewal by written notice, he is bound for the rent. The original lease was extended and the rent fell due as stipulated in the lease. Rent notes do not add to the obligations of the lessee, nor to the rights of the lessor. They are mere evidences of a debt already evidenced by a lease. They are designed as a convenience to the lessor. They add nothing to his security. If the lessor wants notes, it is his duty to ask for them. At least, it is as much his duty to present them for signature as it is the duty of the tenant to tender them when signed.

"A contract of lease is perfect without rent notes. In this case, lessor never demanded rent notes from lessee, nor presented them for his signature. Lessee, knowing he was bound for the rent by his written notice of renewal, never deemed rent notes as sacramental, though he would have signed same if requested to do so.

"Defendant further denies that plaintiff had really any definite intention at any time

up to September 30, 1902, of occupying the premises for her own purposes, within the meaning and intention of her agreement with him. He declares that she had stated to him on August 13th she had no fixed intention to occupy the premises, and that was the only condition fixed in the lease making the right of renewal in any way contingent. He insists that at no time from August 1st to the time of the filing of his brief in the Supreme Court had she had any such purpose in any definite shape, though, with the real object and purpose of receiving a greater rent for the property than that provided for in the lease, she had set forward a petitioner's intention and purpose of herself using the premises."

An examination of the lease will show that it did not provide for a continuance and extension of the original lease under an absolute option reserved to the lessee so to do, if exercised and notified to the lessor on or before August, 1902, but it looked to a possible renewal of the lease between the parties by one for three years at the same rental. There was not to be a single lease prolonged as to duration, but a new lease, which was to follow and replace the first one, which the parties had before entered into. Unless a second lease should be created by mutual consent at or before the expiration of the old lease, there was no contract between the parties. The mere announcement by defendant to plaintiff on or before the 1st of August, 1902, that he would avail himself of his privilege of renewing the lease, did not have the effect, ipso facto, of creating a second lease. Plaintiff would have to give her consent to such second lease before it could be formed. Plaintiff has never given such consent. On the contrary she has positively refused to give it; and defendant's right would be, at best, an action for damages against the plaintiff. The defendant's claim that, by the provisions of the original lease, plaintiff had given her consent by an-

ticipation to a second lease, and that, on defendant's announcing to her that he had availed himself of the privilege which had been granted him, a second completed contract of lease was created, is not, in our opinion, well founded. Defendant was not given a present, absolute privilege to close on or before August 1, 1902, by an acceptance then made and notified by him to the plaintiff, of an open continuing offer, which had been made to him by the plaintiff, and which was held by him subject only to being cut off by the fact that the plaintiff, intending herself to occupy the premises for her own use, should have notified him to that effect on the 1st of August, 1902.

We do not think that defendant held, under the original contract of lease, a present, existing privilege of renewal, subject to defeasance should the lessor subsequently want the premises for her own use and notify the defendant. On the contrary, we think the existence itself of a privilege of renewal was contingent upon the fact that plaintiff might not want the premises, and also contingent upon defendant's notifying plaintiff on or before the 1st of August, 1902, that he would lease the premises for three years at the same rental. If plaintiff herself wanted the premises for her own use, the legal situation was not that defendant was cut off from an existing privilege, but that no privilege in his favor had ever sprung into existence at all.

If, however, plaintiff did not want the premises for her own use, defendant still had no privilege, unless, under such circumstances, he had notified plaintiff on or before August 1, 1902, of his intention to take a lease of the property for three years at the same rental.

Defendant's contention that plaintiff never had the intention to use the premises for her own use, and that her declaration that she needed the same was without foundation in fact, and was advanced solely to cut off his

own right of leasing the property, is not, we think, supported by the evidence. Plaintiff was not restricted as to the particular use to which she would apply the property. She was under no obligation to use it exclusively for herself. The fact that she proposed to form a partnership with other parties, and that the premises should be occupied by that partnership in conducting its business therein, would not take from that use its character of being a use for her own purposes. We do not think it was essential for plaintiff's intended use of the property to have been an immediate use. It was a use such as a lease of the property to the defendant for three years would have cut off. We think it quite likely that plaintiff would not have immediately utilized the property for her own use, and that the attempted negotiation with the defendant for a new lease for one year was due to such a fact. We are of the opinion that the judgment appealed from is correct in law, and correctly disposes of the rights and obligations of the parties. For the reasons herein assigned, it is affirmed.

MONROE, J., dissents.