(117 So. 586)

No. 27076.

## ZIBILICH v. ROUSEO.

May 7, 1928. Rehearing Denied June 4, 1928.

Theodore Cotonio, of New Orleans, for appellant.

F. F. Teissier and Legier, McEnery & Waguespack, all of New Orleans, for appellee.

THOMPSON, J. This is a suit by the lessee to cancel a lease contract on the ground that he was deprived of the use of the property for the purpose for which it was leased.

There is also a demand for the return of that portion of the rent paid in advance for the period between the closing of the building and the date to which the rent had been paid.

The building was closed under the direction of the state fire marshal, for the reason that it did not contain adequate exits of escape in case of fire as required by law.

The defendant denied that the fire marshal had authority to order the building closed, and charged that the business was conducted at a loss, and that the lessee, in order to be relieved of a bad contract, made use of the fire marshal as a subterfuge or pretext.

The trial was had before a jury, which rendered a unanimous verdict in plaintiff's favor on both demands.

The lease was entered into on April 6, 1921, for a term of 15 years and one month. The

subject of the lease was a two-story building to be erected thereafter at No. 315 S. Rampart by the lessor under plans and specifications to be furnished by the lessee, which building was to be occupied and used by the lessee as a moving picture theater.

The building was completed in accordance with the plans and specifications, and in conformity with the city ordinances and the regulations of the fire prevention bureau.

The lessee took possession and operated a moving picture show therein for nearly 2 years.

It appears that people who owned property, or tenants who occupied the property, on the side and the rear of the theater, where the doors or exits were provided, complained of the language used and nuisances committed by patrons of the theater who came out at said doors or exits. The result of the protest was that all of the doors and exits were permanently closed, leaving the front of the theater as the only exit.

This situation was notified to the lessor, but he made no attempt to remedy the condition.

The lessee thereupon called on the fire marshal, who informed him that, if the exits as required by law were not provided, he would be compelled to order the place closed.

A delay was given, but nothing was done to comply with the law, whereupon the chief deputy state fire marshal issued peremptory instructions to the lessee and occupant of the building to close the same and to cease the operation of the moving picture show therein until proper exits were made in the building.

We have carefully examined the record, and we find no justification whatever for the charge that the action of the fire marshal was brought about by the lessee in order to be relieved from his lease contract. The abutting proprietors and tenants had just ground for complaint, and the lessee was left no other alternative but to comply with the order of the fire marshal by closing the theater.

The question therefore is whether the lessee was compelled to close the property and to cease operating his picture show on the order of the state fire department.

Section 5 of Act No. 26 of 1914 empowers the fire marshal or his authorized representative, upon complaint of any person having an interest in any building or property adjacent, and without any such complaint, to enter into and upon all buildings at all reasonable hours for the purpose of examination, and whenever any building or other structure which, for want of proper repair, or by reason of age and dilapidated condition, or *for any cause*, is especially liable to fire, the said fire marshal or his representative shall order the same to be removed or remedied, and such order shall be forthwith complied with by the owner or occupant of the said building.

Section 19 of Act No. 164 of 1916 provides that no picture machine shall be installed, maintained, or operated in any building that does not abut directly upon the street, and in exhibition rooms directly abutting upon one street, the booth inclosing the picture machine shall be placed at the end of the room which is opposite and furthest from the street, or on a balcony or raised platform nearest the street.

No room is to be used as an exhibition room unless it has one separate and distinct exit in addition to the front exit. All exits and entrances are required to open directly from the exhibition room upon the street or alley or into a vestibule or lobby opening immediately into the street. No exit in exhibition halls for picture machines shall be less than four feet wide, and all exit doors shall be arranged to swing outward. All aisles shall lead directly to exits, and all exits shall be directly accessible to aisles.

Act No. 276 of 1918 is an act for the safety of persons from fire or panic in certain buildings, providing for fire escapes, and vesting jurisdiction for the enforcement of the act

in the state labor commissioner under the supervision of the state fire marshal.

Section 1 of the act provides, among other things, how theaters shall be provided with such good and sufficient fire escapes, etc., as will afford safe means of egress in case of fire.

Section 4 of the act provides that the owner of any building used for other purposes, which is adapted to any of the aforesaid purposes (one of which is a theater), or any building to be erected for any of the aforesaid purposes, shall, before adapting or erecting such building, submit to the state fire marshal architectural designs and specifications showing compliance with the requirements of the act, and such building shall not be adapted or erected without the approval of the state fire marshal.

When the theater here involved was ordered closed, it was being operated in violation of the statutes from which we have quoted. All of the side and rear means of exit were permanently and effectually closed, and locked and barred, and there was no means of escape in case of fire except by and through the front door.

The fire marshal was therefore perfectly justified in ordering the plaintiff, as occupant of the building, to close the same and to cease the operation of his moving picture until the dangerous condition had been removed.

Nor have we any doubt that the authority was conferred by these statutes upon the fire marshal to take such action. The authority vested in the fire marshal to require that building to be used for theaters or moving pictures shall be provided with fire escapes and with adequate exits in case of fire certainly carries with it the authority to close such places of amusement when the proper exits are omitted or when they are permanently closed.

█ One of the obligations of the lessor is to maintain the thing in a condition such as to serve the use for which it is hired. Another is to cause the lessee to be in a peaceable possession of the thing during the continuance of the lease. C. C. art. 2692.

And article 2695 of the Code declares that the lessor guarantees the lessee against all the vices and defects of the thing which may prevent its being used; this being true whether such vices and defects existed at the time of the lease or arose subsequently to it.

Article 2699 gives to the lessee the right to annul the lease, if the thing ceases to be fit for the purpose for which it was leased.

There can be no doubt about the proposition that, when the means of exit were closed, the building ceased, under the law, to be fit for use as a theater or moving picture show. Nor can there be any doubt that the want of proper exit was a vice and defect which the lessor guarantees the lessee against, though arising during the continuance of the lease.

This character of vices and defects is clearly not such as would fall under the designation or term of ordinary repairs which the lessee is required to make after notice to the lessor.

The lessor was notified of the order to close the building for use as a picture show and of the precise cause for such order, and took no steps to remedy the situation.

The lessee was justified, therefore, in suing for the annulment of the lease.

The record also justifies the judgment for the amount of advanced, but unearned rent.

The judgment appealed from is therefore affirmed, at defendant's costs.