WILLIAMS v. FEDERAL MACHINE SHOP
LEGLISE, INTERVENOR

(May 7, 1928. Opinion and Decree.)

(*Syllabus by the Court.*)

1. **Louisiana Digest—Chattel Mortgages—Par. 4; Landlord and Tenant—Par. 111.**
A chattel mortgage recorded prior to renewal of lease takes precedence over landlord's lien on movables in leased premises.

Appeal from the Civil District Court. Hon. Wm. H. Byrnes, Judge.

Action by William H. Williams against Federal Machine Shop, Inc. Frank Leglise, intervenor.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

R. T. McBride, of New Orleans, attorney for plaintiff, appellee.

Philip R. Livaudais, of New Orleans, attorney for defendant, appellant.

JONES, J. Plaintiff brought executory proceedings August 27, 1925, on a note for One thousand, eight hundred thirty-five ($1,835.00) Dollars, dated September 14, 1922, made by the Federal Machine Shop, Incorporated, secured by a chattel mortgage recorded on same date on certain machinery contained in the premises No. 706 N. Rampart Street.

Frank Leglise, owner of the leased premises, on September 10, 1925 (the day before the advertised sale by the Sheriff), intervened, asserting his lessor's lien and privilege and claiming his right to be paid by preference out of the proceeds of the sale of said machinery the sum of Two hundred fifty ($250.00) Dollars, rent due by the defendant for the months of August and September, 1925.

The trial Judge decided in favor of the holder of the chattel mortgage note.

From this decision the lessor has appealed.

Plaintiff, after offering in evidence the chattel mortgage note and the Act of Chattel Mortgage, rested his case.

Intervenor filed in evidence two leases, one covering the period October 1, 1921, to September 30, 1922, from Frank Leglise to Federal Machine & Foundry Company, Inc., the other covering the period October 1, 1922, to September 30, 1923, from Frank Leglise to Federal Machine Shop, Incorporated. It is admitted that the last mentioned lease, while undated, was in fact executed and signed August 19, 1922, and was renewed from year to year to September 30, 1925, by endorsement made thereon prior to expiration.

Counsel for plaintiff objected to the introduction of the first mentioned lease, from Frank Leglise to Federal Machine &

Foundry Company, Inc., on the ground that said company was an entirely different corporation.

The record shows that the Federal Machine & Foundry Company, Inc., went through a receivership proceeding and the assets of the company were sold at public auction, together with the right of occupancy of the leased premises 760 N. Rampart Street, by Harry Latter, Auctioneer, on July 18, 1922, pursuant to an order of the Civil District Court, to R. A. Barnes, the mortgagee.

Frank Leglise testified that the mortgaged machinery had always been in the leased premises; since the sale of the business at auction, July 18, 1922, he had seen R. A. Barnes, the purchaser, but once at said place of business when he came to audit the books; on the other hand, Jules Michon, who as president of the Federal Machine Shop, Incorporated, signed the lease on August 19, 1922, and in that capacity signed both subsequent endorsements of renewal of the lease, and the other employees whose names appeared in the final account of the Receiver of the Federal Machine & Foundry Company, Inc., had been there continuously since the first lease "and up to the time of the sale recently by the Sheriff."

The trial Judge, after finding that the chattel mortgage was recorded September 14, 1922, and that the lease to the defendants ran from October 1, 1922, to September 30, 1923, based his judgment on the decision of the Supreme Court in Youree vs. Limerick, 157 La. 39.

Plaintiff contends as follows:

(1) The two lessees, the original corporation, the Federal Machine and Foundry Co., Inc., and the second corporation, the Federal Machine Shop, Inc., must be for the purpose of this suit considered identical, because they have practically the same officers and stockholders and have always done business at the same place, operating with the machinery herein seized.

(2) That the lease between intervenor and the original corporation of August 22, 1922, continued without interruption until this suit was filed on August 27, 1925, and and the landlord's privilege given by this lease ante-dated the chattel mortgage recorded on September 14, 1922, because the renewals of July 23, 1923, and of July 25, 24, kept the original lease alive.

We will first consider the latter proposition.

The renewal of July 23, 1923, reads as follows:

"July 23, 1923.
"The contract of lease as entered into by Frank Leglise and the Federal Machine Shop, Incorporated, entered into August 19, 1922, as shown on the reverse side hereon is hereby renewed between Frank Leglise and the Federal Machine Shop, Inc., for a period of one year, commencing on the first day of October, 1923, and ending on the thirtieth day of September, 1924, under the same agreements thereon.
"FEDERAL MACHINE SHOP, INC.
"WITNESSES:       Jules L. Michon, Jr.,
"WALTER H. KOCH            Pres.
         "F. LEGLISE."

The wording of that of July 25, 1924, with dates changed is identical.

Do these renewals constitute new leases subordinate to mortgage, or do they keep the original lease alive so as to ante-date the mortgage?

In the Youree case, cited above, it was finally and definitely decided that the lessor's lien on chattels of lessee began from the date of the lease if the chattels were then on the leased premises and it has *precedence* over a subsequently recorded chattel mortgage.

In Remedial Loan Society vs. Solis & Trepagnier, 1 La. App. 164, this Court decided that a tacit reconduction of a lease from month to month created a new lease each month and that a prior chattel mortgage took precedence over a reconduction subsequent thereto.

Intervenor relies on the case of Hill vs. Bourcier and Pond, 29 La. 841, to sustain his point that renewal of a lease is a continuation of the existing contract.

In that case plaintiff had leased a dwelling to Mrs. Bourcier for one year ending September 30, 1873, with B. M. Pond as her surety.

At the expiration of this term *a new lease* was granted to Mrs. Bourcier, at a reduced rent, without security, for the year ending September 30, 1874; and she continued in the occupation of the premises.

*The rent for the last six months under the first lease was* not paid; and, in January, 1874, suit was brought against Mrs. Bourcier and Pond to recover the amount. Judgment was taken by default against Mrs. Bourcier. Pond, the surety, answered that he was no longer liable as surety, because the lessors had novated the contract with Mrs. Bourcier, and had accepted her as their tenant for a prolonged period, and had received from her rent sufficient to discharge the debt for which he was surety.

The Supreme Court in affirming a judgment against the surety said that they found in the record "no evidence" of a contract of novation, whereby the first lease had been disposed of by the second. The Court said:

"The granting of a new lease, at the expiration of the first term, did not extinguish, nor did it in any manner impair, the rights and obligations of the parties under the first lease, nor does it tend to show the substitution of a new contract or obligation in place of the first contract."

The case is merely authority for the proposition that where a second and new lease is entered into, and occupancy thereunder begun while rent is still due under the first and old lease, the permission of the lessor that lessee occupy under a new lease while still his debtor for rent under the old lease, does not bring about an abrogation of the right of the lessor to enforce the payment of the rent due under the old lease. That this decision rather tends to support the view of plaintiff is confirmed by the fact that the editors of Corpus Juris in Vol. 35, page 1037 have cited this case authority for the following principle:

"In point of Legal Operation each renewal lease is a new lease and the taking of it operates as a surrender of the old one."

It must be remembered that the last renewal of the lease was made on July 25, 1924, for a tenancy *to begin October* 1, 1924, to end September 30, 1925. The lien and privilege of intervenor arises under *this lease*, for rent for the months of August and September, 1925, *the last two months of the last lease*. It is only under this last lease for the period October 1, 1924-September 30, 1925, that intervenor can press his lien and privilege.

Intervenor's case would be stronger if the original lease gave the lessee any option or right to extend his contract for a definite time upon proper notice, as leases frequently do, but both leases involved here are absolutely silent as to any right of renewal or extension.

This distinction is emphasized in the above citation from Corpus Juris.

Webster's New International Dictionary defines Renew: "To make new again, to restore to freshness, perfection or vigor."

Bouvier's Law Dictionary (third revision) defines Renew: "To make again as to renew a treaty or covenant—Daggett vs. Daggett, 124 Mass. 151."

Renewal, a change of something old for something new; as the renewal of a note; the renewal of a lease.

From Words and Phrases, Vol. 4, p. 267 and 268, we quote the folowing:

"The word 'renew,' in a lease providing that the lessee shall have the right to renew the lease, imports a giving of a new lease like the old one, with the same terms, stipulations, and covenants. Leavitt vs. Maykell, 89 N. E. 1056, 1057, 203 Mass. 506, 133 Am. St. Rep. 323.

"The covenant in a lease to 'renew' indicates the intention of the parties to execute a new lease, and the duty of the lessee to give notice to the lessor at or before the expiration of the lease of his election to renew. Whalen vs. Manley, 69 S. E. 843, 884, 68 W. Va. 328.

"The meaning of the word 'renew' is to make over, to re-establish or to rebuild; and the meaning of 'extend' is to prolong, to lengthen out. Where a lease for ten years provides for an extension of the term for ten years at the option of the lessee, as distinguished from a renewal of the lease, the lease makes the term twenty years, at the option of the lessee, and his holding over, after the expiration of the ten years, is a sufficient exercise of the option, so that it is immaterial whether the lessor was insane when he afterwards gave a written extension for the ten years. Quinn vs. Valiquette, 68 Atl. 515, 518, 80 Vt. 434, 14 L. R. A. (N. S.) 962.

"The 'renewal' of a conspiracy means to begin it again; to recommence it; to repeat it. Each renewal is a new offense. Commonwealth vs. Bartilson, 85 Pa. 482, 487."

In Mossy vs. Mead, 2 La. 157, the Supreme Court held that the right of renewal for a term of years in a lease was a substantial part thereof, transferable with it.

See also Lieuteaud vs. Jeanneaud, 20 La. Ann. 327; Werlein vs. Janssen, 112 La. 31, 36 So. 216; Jackson Brewing Co. vs. Wagner, 117 La. 875, 42 So. 356; Audubon Hotel Co. vs. Braunig, 120 La. 1089, 46 So. 33; and various cases cited in the Supplement to Dart's Digest, page 533.

In Hincks vs. Hoffman, 12 Orl. App. 218, this Court held that a new contract of lease by reconduction had been effected when the lease provided the omission of both parties to give written sixty-day notice of their intention not to renew should operate a renewal upon same terms and there was no written notice, although occupancy continued after expiration of lease.

As mere silence and acquiescence brings about a new lease in the case of reconduction, a fortiori does the formal signing and dating of a renewal agreement indicates a new meeting of the minds and the confection of a new contract.

For above reasons, the judgment is affirmed.