No. 559

First Circuit

CHARGEOIS ET AL. v. FIERO

(June 30, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)

Mouton & Debaillon, of Lafayette, attorneys for plaintiff, appellee.

J. J. Davidson, Jr., of Lafayette, attorney for defendant, appellant.

LeBLANC, J. Plaintiffs bring this suit against the defendant to recover rent on a small tract of land east of the city of Lafayette, which they had leased to the defendant and Fred Fiero for the term of five years, beginning August 1, 1923, for the purpose of conducting a water resort. There was a cement swimming pool on the premises which we take to have been the main object of the lease. Lessees had the right under the contract to erect the necessary buildings such as dressing rooms, toilets and such other accessories as were necessary to carry on the business contemplated under the lease, and to remove them at its termination.

The high water of 1927 completely inundated the property and it remained under water from the latter part of May until the latter part of August. There was as much as twenty feet of water over it.

Fred Fiero is alleged to be a non-resident and the suit is prosecuted against Ray Fiero alone as a solidary obligor for the amount of rent that is claimed. The defense urged by Ray Fiero is that the inundation of the property during the three months of June, July and August rendered the property totally unfit for the purpose for which it had been leased and therefore he is entitled to an annulment of the lease under article 2699 of the Civil Code, which reads:

"If, without any fault of the lessor, the thing cease to be fit for the purpose for which it was leased, or if the use be much impeded, as if a neighbor, by raising his walls, shall intercept the light of a house

leased, the lessee may, according to the circumstances, obtain the annulment of the lease, but has no claim for indemnity."

Defendant also pleads in reconvention, alleging that as plaintiffs prevented him and his co-lessee from removing the improvements he had placed on the property after the lease had terminated, they are liable for their value which he places at the sum of $315, and he prays for judgment against them for that amount.

The lower court rendered judgment in favor of plaintiff for the full amount of the rent claimed, and in favor of the defendant on the reconventional demand decreeing him and his co-lessee, Fred Fiero, to be the owner of the improvements placed by them on the leased premises with the right to go thereon and remove them. From this judgment, the defendant has appealed.

The contention of the plaintiff is that as the inundation of the property leased caused the defendant only a temporary inconvenience, and did not totally destroy the property leased or damage it to the extent that it would have to be reconstructed, the most the lessees were entitled to was a remission of the amount of rent covering the period of inconvenience which they aver they have remitted to the defendant.

Plaintiffs' contention would more properly apply to a case arising under the provisions of article 2697 of the Civil Code where the rights of the parties are regulated when the property leased is destroyed either in whole or in part. A total destruction by some fortuitous event puts an end to the lease. A partial destruction only grants to the lessee either of two remedies, to demand a diminution of the price, or a revocation of the lease. It is to be noted that even here, the choice of the remedy is given to the lessee. But we do not think that that article is the one which applies in this case. There was no destruction, either total or partial of the property leased. What property was destroyed, if any, consisted of the improvements placed thereon by the lessees. The property leased consisted of the small tract of land with the cement swimming pool on it. The land could not be destroyed and it is not pretended, as we understand, that the cement pool was; but it is manifest from the evidence that during the three months of June, July and August, they both ceased to be fit for the purpose for which they had been leased. As these very three months constituted the bathing season, the only period that was remunerative for the lessees, the inconvenience they suffered was more than temporary as claimed by the plaintiffs. As a matter of fact, the property which they had leased was rendered totally unfit for the purpose for which it had been leased during those three months, and the recourse accorded them under the provisions of article 2699 of the Civil Code was to obtain, not a remission of the rent for that period, but an annulment of the lease.

Counsel for plaintiffs urges very strongly upon us to apply the principle laid down by the Supreme Court in deciding the case of Dussnau v. Generis, 6 La. Ann. 279, in which it refused to annul a lease of a residence and premises in the city of New Orleans because of the fact that the sidewalk and banquette in front of the tenant's house was temporarily submerged with water from a crevasse that had occurred a few miles above the city. The court reached the conclusion that "the law-giver did not contemplate the

dissolution of leases except in extreme cases, but rather an equitable indemnity, to the tenant for a temporary inconvenience sustained unexpectedly and without the fault of the lessor." The facts as disclosed in the body of the opinion show that the water never even reached the yard, and the most the court found was that he was subjected to some inconveniences, but was not deprived of the use of the premises. The difference in the facts between that case and those in the one before us becomes apparent at once upon consideration that in this case, the very property leased was covered with twenty feet of water and it was out of the question for the lessees to use it at all, not to mention using it for the purpose for which it had been leased.

An examination of the cases in which the doctrine of the Dussnau v. Generis case was followed, reveals in each circumstances which show that the inconvenience or discomfort suffered by the lessee was so slight compared to the total loss of the use of the property in this case for the only period of the year during which lessees operated their business on it, that we are satisfied it is not applicable here.

In the case of Viterbo v. Frendlander, 120 U. S. 708, 7 Sup. Ct. 962, 974, 30 L. Ed. 776, the Supreme Court of the United States had before it for consideration a question almost similar to the one presented here, the only difference being that instead of a bathing resort, the property involved in the lease was a sugar plantation. The lease was for a period of five years and during the second year of its life, the property was inundated by water from a crevasse on the Mississippi river. It remained covered with water for three months. It was admitted that after

the water would recede, with the expenditure of some money and the putting out of labor the plantation would grow a crop of cane. Lessor contended that as those were matters incident to the growing of a crop each year, the property had not ceased to be fit for the use for which it had been leased and lessee was not entitled to a revocation of the contract. The court, in a very elaborate opinion, very interesting also because of its discussion of the articles of our Civil Code on the subject of leases, decided adversely to the lessor's contention however, and held, that the lease was cancelled. We quote the following from the opinion:

"The general purpose and the common rule of the Civil Law as expressed in the Code of Louisiana, are: that the lessor shall secure to the lessee the possession, use and enjoyment of the thing leased, against everything but the fault of the latter; and that any loss of the thing, or deprivation of its use or enjoyment by accidents or fortuitous events, shall be borne by the lessor and not by the lessee. This appears from the general provisions in the articles above quoted, by which the lessor is bound, from the very nature of the contract of lease, and without any clause to that effect, not only to deliver the thing leased to the lessee, but also to maintain it in such a condition as to serve the purpose for which it is leased, to cause the lessee to be in peaceable possession of the thing during the continuance of the lease, to make, during its continuance, all repairs, except some petty internal ones, and, to make even those when rendered necessary by unforeseen events; as well as by articles 2697 (2667) and 2699 (2669), which apply both to country estates and to town houses, and entitle the lessee, whenever by a fortuitous event, and without his fault, the thing is either destroyed, or ceases to be fit for the purpose for which it has been leased, or its use is much impeded, to demand the annulment of the lease, and if it is only destroyed in part, to demand either a re-

vocation of the lease or a diminution of the rent."

It is interesting to note that in that case also the court was urged to apply the doctrine of the Dussnau v. Generis case and the cases that followed it, and it may be proper here to quote what the court said in reference thereto:

"The learned counsel for the defendant much relied on some dicta of Louisiana Judges to the effect that the law of the State does not favor the abrogation of a lease when the loss or inconvenience is not caused by the fault of the lessor. Dussnau vs. Generis, 6 La. An. 279; Denman vs. Lopez, 12 La. Ann. 823; Foucher vs. Chopin, 17 La. An. 382; Penn vs. Kearney, 21 La. Ann. 21, 23. But such dicta cannot be understood as laying down a general rule, in opposition to the express words of Articles 2697 (2667) and 2699 (2669) of the Civil Code. The circumstances of each of the cases in which they were uttered were quite different from those before us. In two (2) of them the injury or inconvenience is comparatively unimportant; and in the other two (2) the tenant had not surrendered the lease but remained in possession. In a later case than any of these, which was one of partial destruction by fire of a building in a city, the Court held that under Art. 2697 (2667) the lessee, although he might, if he pleased, have the rent abated, had a perfect right to elect to have the whole lease annulled. Higgins vs. Wilner, 26 La. Ann. 544."

We are of the firm opinion that under the facts as presented, this case comes clearly under the provisions of article 2699 of the Civil Code entitling the lessee to an annulment of the lease. That being so, the lessor has no claim for the rent. To the extent therefore that the judgment of the lower court condemned the defendant for the rent, it is erroneous and will have to be set aside and reversed.

With regard to defendant's reconventional demand for damages for the value of the improvement placed by him and his co-lessee on the property and which he claims they were prevented from removing by plaintiffs, we think the judgment of the district court decreeing them to be the owners thereof with the right of removal, was the proper one to be rendered under the facts and the law in this case. When plaintiffs objected to the removal of this property they were of the opinion, as they still contended throughout this trial, that the lease was not terminated and they had a privilege on the property of the lessees situated on the leased premises to secure the payment of their rent. They no doubt were acting within the exercise of what they considered were their legal rights. We do not believe that the change in the position assumed by them later on, in recognizing the lessee's right to remove the property had the effect of making them liable in damages for the value of the property. Not only the contract of lease but the law itself gave the lessees the right to remove their property and they could have prosecuted that right successfully had they persisted in their efforts to do so.

The judgment of the lower court on the defendant's reconventional demand is, in our opinion, correct and should be affirmed.

It is therefore ordered that the judgment in this case insofar as it was in favor of the plaintiffs and against the defendant condemning the latter to pay the amount of rent claimed is annulled, set aside and reversed, and it is now ordered that the said plaintiff's demand be rejected, and it is further ordered that the judgment on the demand of the defendant in reconvention be and the same is hereby affirmed. It is also ordered that the plaintiffs pay all costs of this proceeding in both the lower and in this court.