## CLAUDE NEON FEDERAL CO., Inc., v. MEYER BROS., Inc.

### No. 14532.

Court of Appeal of Louisiana. Orleans.

Oct. 30, 1933.

Miller, Bloch & Martin, of New Orleans, for appellant.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellee.

HIGGINS, Judge.

This is a suit by a lessor against a lessee for liquidated damages under a contract for the rental of an electric sign. The defense is that the leased building, on which the sign was erected and which housed the business of the defendant, was so badly damaged by fire, which also destroyed the contents of the building, that the lease on the building was canceled and, under the provisions of the lease of the sign as well as under the law, defendant was entitled to an annulment thereof, although the sign was not destroyed by the fire.

There was judgment dismissing plaintiff's suit and granting judgment in reconvention in favor of the defendant for $4.98, admittedly due for an overcharge, and from this judgment plaintiff has appealed.

The lease, which is annexed to and made part of the petition, is dated February 9, 1931, and under its terms the plaintiff undertook to supply and maintain an electric sign on the building 800 St. Charles street, corner of Julia street, bearing solely and only the following legend in red Neon light letters:

"Raymond 3131

"Tire Trouble"

The lease was to run for 36 months, with a monthly rental, payable in advance, of $21.-37. It also contained a provision that, in the event of a breach of the agreement by the lessee, liquidated damages at the rate of $12.-82 would become due for each of the unexpired months. The lease had run for more than 14 months when, on March 29, 1932, the building, on which the sign was erected, was so badly damaged by fire that the owner agreed that the defendant was entitled to the annulment of the lease on the building. The owner and defendant then notified plaintiff to remove the sign, and this was done.

The first issue presented is whether or not, under the terms of the lease, the fortuitous event had the effect of annulling it; the sign being neither partially or wholly destroyed by the fire.

Under clause 3 of the agreement the lessee was to use the display for 36 months and pay the rental each month "during the life of this agreement." Clauses 2 and 8 read as follows:

"2. This Company agrees to furnish, erect, connect and maintain at its own cost the Claude Neon Electrical Advertising Display and accessories hereinafter called the electric display which is and shall remain the property of the Company, at 800 St. Charles Street. * * *"

"8. It is agreed that the Customer shall not remove the said property from the address where first delivered. * * *"

The contract is silent as to the lessee's liability for rent or liquidated damages in the event a fortuitous event would render the sign ineffective for the purpose for which it was rented. The lease is positive in its provision that the sign shall remain the property of the lessor and shall not be removed from the address where it was delivered. The agreement is likewise silent as to the right of the lessee to have the sign removed to another address in the event an act of God rendered the sign useless on the building where it was installed. Can it be said that it was the intention of the parties that the lessee should be bound unconditionally and unqualifiedly and in any event against all hazards for a fixed and definite period of 36 months? Such an interpretation would not only be manifestly unreasonable and unfair, but would seem to destroy the language found in clause 3, in which it is stated that the lease shall be for 36 months and $21.30 shall be payable as rent each month "during the life of this agreement." If it were the intention of the parties that the lessee should be bound in any event for 36 months, it would have been unnecessary to use the above-quoted words. Under the language of paragraphs 2 and 8 of the contract the sign was restricted to a particular location as an advertisement of a business there. It seems clear that under the definite wording of these two paragraphs that it was the intention of the lessor that the sign could not be used anywhere else, so that if, by a fortuitous event, the defendant's lease on the building was canceled and annulled, and defendant was compelled to remove his place of business to a new address, then the lease of the sign would also end. If this were not so, the lessor would have stipulated that the lessee, wherever his business might thereafter be located, would continue to use the sign, or that the lessee, with the permission of the lessor, could have the sign removed to the new address. But this was not provided, and the lessor, under the express provisions of the lease, could refuse to allow the lessee to remove the sign to another address.

The contract is on a printed form which was furnished by the lessor. Therefore, any doubtful, uncertain, or ambiguous clauses in it are to be construed in favor of the lessee and against the lessor. Murrell v. Lion, 30 La. Ann. 255; Rosenfield Dry Goods Co. v. Handelman (La. App.) 148 So. 71; Werlein v. Janssen, 112 La. 31, 38, 36 So. 216; Rosenthal v. Prutsman, No. 8392 Orleans App. (unreported) [see Louisiana and Southern Digest]; Uniola Real Est. Co. v. Levy Mattress Co., No. 8151 Orleans App. (unreported) [see Louisiana and Southern Digest]; Beirne v. Gill, 34 La. Ann. 7.

We conclude that it was not the intention of the parties that the lessee should be bound unconditionally against all hazards, and that it was their intention that the lease would end if the lease on the building was annulled as a result of a vis major and the lessee was compelled to vacate the premises 800 St. Charles street and cease his business operations there.

The evidence unquestionably establishes the fact that the fire was a very destructive one, destroying the defendant's merchandise and equipment and ruining the interior portion of the building occupied by the defendant, but not the exterior thereof or the sign. The premises were uninhabitable and defendant was compelled to move, and it was necessary for the owner to make extensive repairs. The delay in effecting a settlement of the insurance and repairing the building required about 3 months. The owner of the building, after mature reflection with the benefit of legal advice, felt that the defendant had the right to ask for the annulment of the lease because of the extent of the damage done by the fire to the building and the delay necessary in order to rehabilitate the place.

The owner of the property unquestionably gave the matter serious consideration, for it it shown that the defendant occupied the premises for about 17 years, paying the rent regularly and promptly, and at the time of the fire was paying $650 a month under a lease which had about 4 more years to run. Consequently, in agreeing to the annulment of the lease, the owner was giving up a contract under which he would have received during the remainder of the time over $31,000.

Defendant had been engaged in the business of selling gasoline and lubricating oil, selling and repairing batteries, selling and repairing automobile tires, where the major profit was made from selling a nationally advertised product, Hood tires, the manufacturer of which it represented in this territory. For the defendant to have waited 3 months, while the building was being repaired, would have meant a serious loss in busi-

ness and probably forfeiture of its contract with the Hood Company.

■ It appears to us that annulment of the lease was based upon sound legal grounds. Articles 2697 and 2699 of the Revised Civil Code read as follows:

"2697. If, during the lease, the thing be totally destroyed by an unforeseen event, or if it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages."

"2699. If, without any fault of the lessor, the thing cease to be fit for the purpose for which it was leased, or if the use be much impeded, as if a neighbor, by raising his walls shall intercept the light of a house leased, the lessee may, according to circumstances, obtain the annulment of the lease, but has no claim for indemnity."

In the case of Meyer v. Henderson et al., 49 La. Ann. 1548, 16 So. 729, the plaintiff sued for the annulment of a lease on a building that was partially destroyed by fire. In upholding the plaintiff's contention the court said:

"But when the partial destruction has been of such a nature as to menace discomfort to the tenant during the entire term; to cause the tenant to abandon the premises, in order that repairs may be made; when the premises are no longer suitable for the purposes for which they were leased,—in such cases it is clear that the lease should be annulled.

"The partial destruction of the building leased by plaintiffs from defendants made it entirely unfit for the purposes for which it was leased. It was a wreck. It was not habitable. It was unfit for the storage of goods and merchandise. The necessary repairs to it required some months for their completion.

"If these facts alone were presented, the plaintiffs would be entitled to a decree annulling the lease."

On rehearing, with reference to this point, the court said:

"We see no reason to change our views so expressed." In the case of Chargeois et al. v. Fiero, 15 La. App. 290, 129 So. 229, 230, the court held:

"There was no destruction, either total or partial, of the property leased. What property was destroyed, if any, consisted of the improvements placed thereon by the lessees. * * * As a matter of fact the property which they had leased was rendered totally unfit for the purpose for which it had been leased during those three months, and the recourse accorded them under the provisions of article 2699 of the Civil Code was to obtain, not a remission of the rent for that period, but an annulment of the lease."

See, also, R. C. C. art. 2699; Viterbo v. Friedlander, 120 U. S. 707, 7 S. Ct. 962, 974, 30 L. Ed. 776; Bernstein v. Bauman et al., 170 La. 378, 127 So. 874; Zibilich v. Rouseo, 166 La. 547, 117 So. 586; Dehan v. Youree, 161 La. 806, 109 So. 498; Minis v. Greco, No. 8175 Orleans App. (unreported) [see Louisiana and Southern Digest]; Reynolds v. Egan, 123 La. 294, 48 So. 940; Meyer et al. v. Henderson et al., supra; King v. Grant, 43 La. Ann. 817, 9 So. 642.

It has been suggested by the plaintiff that the defendant could have had the sign removed to its new address and installed there. This argument is without merit: First, because the defendant, under the express terms of the lease, was forbidden to do so; and, secondly, because the evidence shows that the sign would have to be made over at an additional cost of 40 per cent. of its original price before it would be serviceable at the other place.

Plaintiff also argues that as the sign did not give any address or name of the business advertised that it would be just as effective, in advertising defendant's business, if allowed to remain at its original location, as the sign would be if removed to defendant's new address. This argument is unsound because the sign had the effect of attracting motorists' attention to the defendant's place of business at 800 St. Charles street, where other displays indicated that that was the place where the repair work would be done. It happened as a coincidence that a competitive business was operated in the premises 800 St. Charles street after it was repaired, and to have left the sign on the building would have meant that the defendant was paying for an advertisement which would have benefited its competitor's business. Moreover, the owner of the building had ordered the removal of the sign.

Finally, plaintiff says that defendant is estopped from denying liability because its representative agreed to have the sign removed to the new location at defendant's cost and plaintiff granted a 45-day extension in consideration thereof; and that the defendant waited 4 months after the accident before denying liability. The defendant's officers deny that they consented to this alleged new arrangement. Plaintiff's witnesses admit that in order to effect a change in the lease a new agreement was necessary, or a rider attached to the old one. This was not done. We are satisfied that there never was any definite understanding that the sign would be removed to the new address at the defendant's cost.

■ The plaintiff's position that he was lulled into a sense of security by defendant wait-

ing 4 months to deny liability is untenable because plaintiff was fully apprised of all of the facts in the matter. He was not deceived or misled and did not alter or change his position or surrender any right as a result of the defendant's action. The delay in bringing the matter to issue was as much the fault of the plaintiff as the defendant. The plea of estoppel was properly overruled. Ruling Case Law, vol. 10, verbo "Estoppel," par. 21; Hebert v. Champagne, 144 La. 659, 81 So. 217; Blunson v. Knighton (La. App.) 140 So. 302; Chargeois, et al. v. Fiero, supra; Straus v. City of New Orleans, 166 La. 1035, 1058, 118 So. 125; Lewis v. King, 157 La. 718, 726, 103 So. 19.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

JANVIER, Judge (dissenting).

I believe that Civil Code, articles 2697 to 2700, inclusive, have no application to the facts of this case.

I direct attention to two things:

First. The sign was in no way damaged by the fire which occurred inside the building, and its use was in no way impeded or impaired except as the result of the fact that defendant chose to abandon the premises on which the sign was located.

Second. Defendant had provided the location for the sign, and plaintiff had nothing to do with the selection of the said location.

A most inequitable result has been arrived at in the majority opinion. Plaintiff constructed the sign especially for defendant and will suffer a substantial loss merely, because defendant preferred to abandon the premises on which it was located rather than to suffer the slight inconvenience of moving to another location for a short time.

My associates feel that, because in article 2699 it is provided that if the use of property leased is impaired or impeded because a neighbor raises his walls and cuts off the light the tenant has the right to annul the lease, in this case the tenant had the right to cancel the lease of the sign. I can see the reason for the provision that if I own a piece of real estate which I lease to a tenant and a neighbor erects another building or a wall, which he has a right to erect, my tenant is within his rights in moving, but that is because I, the owner of the building, am unfortunate in owning a building so located; but in the case at bar the location of the sign was chosen entirely by the defendant and, in the contract, defendant agreed to maintain the right to keep the sign located at that place; in this obligation the defendant has failed by voluntarily abandoning the premises.

I respectfully dissent.