For the reasons assigned, both motions to dismiss are denied.

164 So. 627

## S. GUMBEL REALTY & SECURITY CO., Inc., v. L. FEIBLEMAN & CO., Inc., et al.

No. 33547.

Dec. 2, 1935.

Monroe & Lemann and Nicholas Callan, all of New Orleans, for appellants.

Isaac S. Heller and Leopold Stahl, both of New Orleans, for appellee.

ODOM, Justice.

Plaintiff leased to the defendant L. Feibleman & Co., Inc., the stores and premises designated as numbers 800–804 Canal street, corner of Carondelet street, and a store designated as 121 Carondelet street, between Canal and Common streets in the city of New Orleans, for a term of five years, beginning on October 1, 1929, and ending on September 30, 1934. The consideration was a cash rental of $75,000 per year net to the lessor. In addition to the cash rental, the lessee agreed to pay "promptly as and when due" any and all taxes "which may become due" on the leased premises during the term of the lease. Sears, Roebuck & Co., Inc., subsequently became a party to the lease and assumed all the obligations of the lessee.

The city taxes on the property for the year 1934 amounted to $10,535.45 and the state taxes amounted to $4,457.73, or a total of $14,883.18. The lease ended on September 30, 1934, and therefore the lessees had possession of the property for nine months, or three-fourths, of that year, and plaintiff's theory is that the lessee should pay three-fourths of all the taxes for that year, or $11,244.89.

The lessees' contention is that they owed only such portion of the taxes for the year 1934 as were due and payable up to the time the lease expired on September 30.

Under Act No. 159 of 1912, § 37, as amended by Act No. 125 of 1932, page 420, city taxes in New Orleans are levied in the month of December for the following year and may be paid in three equal installments, one due in April, one in August, and the last in December. The lessees paid the first two installments of the city taxes for 1934, amounting to $7,023.63, as these installments were due and payable prior to the expiration of the lease. As the last installment of the city taxes, amounting to $3,511.81, did not fall due until after the expiration of the lease, the lessees refused to pay that installment or any part of it, and, as the state taxes were not due and payable until December, they refused to pay any part of that tax. As stated, the lessor contends that the lessees should pay three-fourths of the taxes, both city and state, for 1934, amounting to $11,244.89. The lessees actually paid only $7,023.63, leaving a balance due, as alleged by the lessor, of $4,221.26, for which amount, plus 10 per cent. attorneys' fees, this suit was brought. There was judgment for plaintiff as prayed for, and defendants appealed.

Plaintiff set out the above-stated facts in its petition and annexed to and made a part thereof the lease contract. Defendants filed an exception of no cause of action, which was overruled. They then filed answer admitting the execution of the lease. They admitted that plaintiff's allegations as to the total amount of city and state taxes levied against the property for the calendar year 1934 were true and especially set out that they had paid all said taxes which they were due to pay under the lease contract. They especially denied that they were bound under the contract to pay three-fourths of said taxes, and alleged that instead of their being bound to pay three-fourths of the taxes, they were bound to pay only the amount thereof which was due and payable prior to the expiration of the lease.

After the answer was filed, the plaintiff by rule submitted to the court the question of its right to judgment upon the petition and answer. Upon consideration of the petition and the documents attached and the answer of the defendants, the court was of the opinion that plaintiff was entitled to judgment as prayed for.

 Whether plaintiff is entitled to recover the amount sued for, or any amount, depends upon a proper interpretation of the lease contract, as to which there is a radical difference of opinion between plaintiff and defendants. The contract must, of course, be construed as a whole in order to discover the intent of the parties. It is the intent which governs and we must look to the written instrument alone for the intent, as we are unaided by oral testimony of the parties as to their understanding of its meaning. We think the intent clearly appears from the instrument which evidences the agreement.

The pertinent and relevant stipulations in the contract are these: That the annual cash rental for the property is $75,000 "net to the lessor"; that in addition to the cash rental, "which is to be strictly net to the lessor," the lessees are bound "to pay promptly as and when due" any and all taxes of whatever nature, no matter for what purpose or by whom imposed "which may become due on the leased premises during the term of the lease, and to deliver the tax receipts evidencing all payments promptly to the lessor"; and "the intent of this lease being that the Seventy-five Thousand ($75,000.00) Dollars cash rental per annum shall be *absolutely net to the lessor.*" The words "absolutely net to the lessor" are italicized in the original.

The contract is long and meticulously drawn. The parties were excessively careful in the small details as to the items of expense in protecting the property by insurance, both fire and tornado, and as to repairs during the term of the lease. Nothing seems to have been overlooked. Every imaginable item of repair necessary to keep the property up or put it in such condition as might be desired by the lessees is mentioned, and, as to who should pay the expense of all this, it is provided:

"No repairs of any kind, character or description shall be due by lessor, but all repairs and improvements of any kind or

nature whatsoever that shall be made or that it shall become necessary to make to said premises or appurtenances shall be entirely at the cost and expense of the lessees. The lessees moreover bind themselves to comply at their own expense with the provisions of all state and Federal laws and city ordinances and to pay, at their own expense and without charge to the lessor, any charges or claims against the property leased during the term of the lease for street or sidewalk pavement or other civic improvements; the intent of this lease being that the Seventy-five Thousand ($75,000.00) Dollars cash rental per annum shall be *absolutely not to the lessor.*"

Throughout the contract where an expense is mentioned, it is expressly stipulated that the lessee shall pay it. It is further provided that the lessee shall hold the lessor "entirely harmless from any and all loss, damage or liability due any person or property whatsoever" resulting from the improper hanging of signs or for any other act of "misfeasance, nonfeasance or malfeasance of lessee or any sub-tenant of lessee," and from all loss, damage, or liability to persons or property sustained by the lessees, and employees or third persons during the term of the lease "by reason of any defect or faulty or improper operation of any portion of the building or property leased or of the elevators, whether due from failure to make repairs or from any other cause whatever." It is further provided that in case any suit should be filed against the lessor "arising from any such cause of action, lessor shall have the right to call the lessees in warranty, and to obtain against lessee in warranty and to obtain against lessees any money judgment which may be obtained against lessor in such proceeding."

The language of the contract makes it as clear as the English language can express it that the intent of the parties was that the lessees should take over all the property for a term of five years beginning October 1, 1929, and ending September 30, 1934, and should be responsible for every conceivable charge against it and every item of expense for protecting and keeping it in repair during the entire term of the lease. In short, it was clearly intended that the cash annual rental of $75,000, which was $6,250 for each month, should be, as the contract stipulated, "absolutely net to the lessor."

Taxes, both city and state, are levied for each calendar year. All taxes on this property for the calendar year 1934 amounted to $14,993.18. The lessees possessed the property for nine months, or three-fourths of that year, and unless they pay three-fourths of the taxes, the result necessarily will be that the cash rental for the first nine months of the year will not be net to the lessor.

But counsel for the lessees argue that what the contract means is that the lessees were to pay only such taxes as became due and payable during the term of the lease, and inasmuch as the state taxes and one third, or one installment, of the city taxes for 1934 were not actually payable when the lease expired on September 30, 1934, they have discharged their obligation in

full. The clause in the lease contract which they stress reads as follows:

"In addition to said cash rental, which is to be strictly net to lessor, lessees hereby bind and obligate themselves to pay promptly as and when due any and all taxes of whatsoever nature and kind, no matter by whom or for what purpose imposed, which may become due on the leased premises during the term of the lease."

Counsel in their brief emphasize the words "which may become due on the leased premises during the term of the lease." They interpret the word "due" to mean payable or exigible. It has that meaning. But the word "due" has a double meaning: "(1) That the debt or obligation to which it applied has by contract or operation of law become immediately payable; (2) a simple indebtedness, without reference to the time of payment, in which it is synonymous with 'owing' and includes all debts whether payable in praesenti or in futuro."

"The word 'due' has two meanings. The one indicates a debt ascertained and fixed, though payable in the future; and the other a debt where the money has become payable, so that a suit will lie on it presently." See Due, Words and Phrases, First Series, Vol. 3, page 2213.

The word "due," as defined in Webster's New International Dictionary, Second Edition, has several meanings, one of which is, "having reached the date at which payment is required; payable." This is the meaning which counsel for defendants say the word has in the contract under interpretation. Other meanings given by Webster are: "(1) Owed or owing as a debt. (2) Whatever custom, law or morality requires to be done or paid; a legal charge, fee, toll, tribute or the like."

Counsel for the lessees concede that the word "due" has a meaning other than that for which they contend, and suggest that if there be doubt as to the meaning intended by the parties by the use of that word, we should resolve that doubt in favor of the lessees under the well-recognized rule that any doubt "as to the intentions of the parties to a contract of lease, arising out of uncertain terms of the contract, will be construed in favor of the lessee. It is the business of the lessor to have the agreement expressed in clear and certain terms." Murrell v. Lion, 30 La. Ann. 255; Werlein v. Jannsen, 112 La. 31, 36 So. 216; 16 R.C.L. 699; Civ.Code, art. 2474.

We think there is no doubt about what the parties meant in this case by the last phrase in the above-quoted clause of the contract. As we have already stated, the contract must be construed as a whole, giving to it as an entirety the meaning intended by the parties. When so construed, it is perfectly clear that it was intended that the lessees should pay every conceivable charge against the property arising during the term of the lease, and it is not disputed that the taxes for the year 1934, both city and state, became fixed charges against this property prior to the date on which the lease expired. On that date the property was burdened with a charge for

the taxes of that year and the fact that a portion of the taxes was not payable until a later date does not relieve the lessees from their obligation of discharging their pro rata of that burden and thereby making the cash rental "absolutely net to the lessor."

When we consider the numerous stipulations in the contract to the effect that the cash rental was to be absolutely net to the lessor; that the lessee was to pay every conceivable item of expense for insurance, repairs, damages, street and sidewalk paving, and all taxes of every character and description, and especially the clause in the lease reading as follows, "the intent of this lease being that the Seventy-five Thousand ($75,000.00) Dollars rental per annum shall be *absolutely net to the lessor,*" we must conclude that the parties intended that the word "due," as used in the contract, should have reference to the taxes which became a debt due or a charge against the property for the year 1934, and that it should not refer to taxes which became payable during that time.

Unaided by any evidence as to the intent of the parties except the contract itself, our conclusion is that they meant the lessee should pay three-fourths of the taxes for 1934, even though not payable at the time the lease ·expired.

The lessee took possession of the property on October 1, 1929. It is not shown whether the parties prorated the taxes for that year, and, if so, how. If that were shown, we would have before us evidence of the manner in which they interpreted their own contract, which would be controlling. The lessee knew, of course, how the payment of the taxes for 1929 was adjusted. If it be true that the payment was made for that year as they contend it should be made for 1934, it was their duty, we think, to have so alleged in their answer. They did not raise the point in their pleadings. If they had, no doubt the trial judge would have set the case down for a hearing on the facts instead of rendering judgment on the pleadings.

We have not discussed the cases cited by the respective parties for the reason that none of them are quite in point. We will state, however, that in some of the cases cited by counsel for the defendants the contracts which were before the court for interpretation contained the expression "due and payable," instead of the word "due." If the contract in this case had specified that the lessees should pay all taxes which became "due and payable" during the term of the lease, a different construction might be proper.

For the reasons assigned, the judgment appealed from is affirmed.