GLADNEY, Judge.
In 1949 the successions of Mrs. Eloise McFarland Weltner Brower and David McCoy Brower who died intestate in West Carroll Parish on November 17, 1925 and July 9, 1928, respectively, were initiated by their five children for the purpose of obtaining judgments decreeing ownership and possession. Accompanying these proceedings were separate contradictory rules for service upon the inheritance tax collector in order to have the court determine the amount of taxes, if any, as should be found due. Attached to the pleadings were affidavits for establishing the values of the property comprising the estates. Denying the values placed on the property by the heirs, the State put the rule at issue and asked for the assessment of statutory penalties.
For more than five years the issues arising from the tax rules have produced a multitude of pleadings and hearings, gnd some rather unusual legal incidents. A narrative of such events would involve much detail and is not essential to a proper resolution of the appeal. We thus pass over such an undertaking. All proceedings affecting the two rules before the trial court were consolidated for the purpose of trial, and in each separate judgments were entered and from which separate appeals were taken. Although we are herein concerned only with the judgment rendered in the Succession of Mrs. Brower, we note that the issues raised herein are the same as in the Succession of Mr. Brower. The judgment complained of was in favor of the State of Louisiana and against the applicant heirs, ordering them to pay inheritance taxes of $168.38, predicated on the estate found to have a valuation of $82,071.-38, less all deductions prescribed by law. Applicants were condemned to; pay legal interest and, costs. The appeal presents two major issues: first, the correctness of the disposition by the trial court in rejecting a plea of prescription of three years based on Article XIX, Section 19, Louisiana Constitution of 1921, LSA, and LSA-R.S. 47 :- 2422; and second, if the ruling on the plea of prescription is approved, then, in such event we must adjudicate the value of the estate and the amount of the taxes due thereon.
We turn our attention first to the plea of prescription, which if sustained will obviate consideration of the issue as to the amount of taxes fixed in the judgment.
Prior to the death of Mrs. Eloise McFarland Weltner Brower the prescription as to inheritance taxes levied by the State of Louisiana was governed by Section 1 of Act 82 of 1924. It stipulated a limitation of five years, commencing with the date of the opening of the' succession and remained in effect until superseded by Act 35 of 1938, which upon adoption became an amendment to. Article XIX, Section 19 of the Louisiana Constitution. The amendment reads: “ * * * and provided, further, that all taxes and licenses, other than real property taxes, shall prescribe in three years from the 31st day of December in the year in which such taxes or licenses are due. * * * ” The prescriptive period provided by Act 82 of 1924 was thereby repealed. Accordingly, when the Revised Statutes of Louisiana of 1950 were adopted by the Legislature as Act No. 2 of the Extra Session of 1950, LSA-R.S. 47:2422 was written into the inheritance tax law to read as follows:
“Inheritance taxes due to the state shall prescribe, as provided in the constitution, in three years from the thirty-first day of December of the year in which such taxes become due.”
*220 In support of the decision overruling the plea of prescription, counsel for the State argues Act 35 of 1938 was not intended to apply to inheritance taxes, hut only to taxes which currently become due without necessity of legal proceedings to fix the amount of the taxes.. This also was the view of the district judge. But this construction is contrary to LSA-R.S. 47:2422 which constitutes legislative interpretation as to the application of the three year per-emption to inheritance taxes.
A ‘further contention is that the prescription does not accrue until the succession is opened and the tax fixed in appropriate proceedings, it being argued that to hold otherwise would place a heavy burden upon the State and cause it considerable losses in taxes. If we accept this viewpoint it would- have the effect of restoring the provisions of Act 82 of 1924 which proscribed the limitation commences to run only from the opening of succession .proceedings. That the Legislature .had. no, in-tentiop of retaining such a restriction on Act 35 of 1938 manifestly appears from LSA-R.S. 47:2422.- The law .imposing, inheritance, taxes. and .formulating the procedure for collection as it existed when the 1938 amendment became effective, has remained substantially intact except for.the change in the- prescriptive -period, and has been subjected, to only minor revision. It was necessary to write-in the Revised Statutes section 2422. so the law would conform to the. Ccmst-itutional amendment.
Perhaps the most serious issue involves the meaning to be accorded the word “.due”. What meaning should be given “due” as written into the Constitutional amendnient and carried over into LSA-R.S. 47:2422 ? Article 18 of the LSA-Civil Code furnishes us an. important statutory rule for construction and is stated thus:
“The universal and most effectual-way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.”
Undoubtedly, the word “due” with reference to taxes implies that such taxes are then owing, collectible or matured. As often defined in the. dictionary the word “due” may mean “owed or owing as a debt”. See Gumbel Realty & Security Co., Inc., v. L. Feibleman & Co., 1935, 183 La. 685, 164 So. 627, 629. The following meaning is attributed to the word in 13 Words and Phrases, page 452:
‘ “ ÍDue’ signifies, in its larger and general sense, that which is owed; that which one contracts to pay, do, or perform to another; that which is owing. In its larger' sense, it covers liabilities matured and unmatured, People v. Vail, 6 Abb.N.C. 206, 210, and-may, import indebtedness, without reference to the day of payment, or that that day has passed, or be. used.not in .the sense of ‘payable,’ but as:-importing an existing ■ obligation. Scudder v. Scudder, 10 N.J.L. (5 Halst.) 340, 345; Sand Blast File Sharpening Co. v. Parsons, 54 Conn. 310, 313, 7 A. 716; Fowler v. Hoffman, 31 Mich. 215, 219. When used in an attachment statute, it signifies that the day.. when payment ought to be made has arrived. Bowen v. Slocum, 17 Wis. 181, 190. Much depends-upon -the -context- and evident purpose . intended. United States v. [State] Bank of North Carolina, 6 Pet. 29, 36, 31 U.S. 29, 36, 8 L.Ed. 308. And as used in Laws Wis. 1893, c. 293, providing that insolvent and mutual ' insurance'-companies shall proceed to collect all claims due from policy hold-’ ers, ‘claims due’ import existing obli-' gations or indebtedness, without reference to whether an assessment has ' been made and notified Or not. Wyman v. Kimberly-Clark Co., 93 Wis. 554, 67 N.W. 932, 933.”
By attaching the ordinary meaning which should be given to the amendment we are .of the opinion that the inheritance taxes became, due at the date of the death of the decedent. Other provisions of the statute, LSA-R.S. 47 ¡2401-47:2423, regulating *221 the collection of inheritance taxes furnishes some help. Section 47:2409, subd. C, provides in • default of proceedings by the heirs or legatees and after six months from the death of the de cuius the tax collector shall proceed summarily by rule to have the taxes judicially fixed; and another section, 47:2420, imposes interest of one per cent per month on past due taxes, beginning six months after the death of the decedent. When these provisions are considered LSA-R.S. 47:2422 becomes clear. The taxes became due from the moment of death, even though the amount was then unknown. If this were not so why should the inheritance collector be permitted to independently proceed to have, the taxes assessed within six months from ,the-death of the de cuius, and what justification in equity.or law could be found for levying the heavy penalty of one per cent per month on taxes not due? The six months period allowed for judgment must be considered only as a grace period, and the táiés should be regarded as due from the date of death. It’ is' immaterial to the State whether the heirs or legatees accept a succession or not. Regardless of the solvency of’.the estate by availing itself of LSA-R.S: 47:2409, subd. C, the tax collector by summary rule can have the taxes determined by the court any time after six months from the death of the decedent. ■ •; ■ . -
It was stated by the judge a quo and is restated by counsel for the State that to hold the-prescriptive period runs prior to the opening of the succession by the heirs or legatees would entail an undue hardship on the State and result in loss of taxes. The reasons which led to the enactment of Act 35 of. 1938 .are enunciated by Chief Justice O’Niell in State v. Alden Mills, 1943, 202 La. 416, 12 So.2d 204, 208, as being due to popular demand for a prescription of State claims for back takes. The opinion declares:
“ * * * it was more important to give the taxpayers protection against having to produce their books, records, receipts and vouchers which were already more than three years old, than it was to warn them to preserve such documents and records for a period of three years after the new law — providing for the three years’ period of prescription or limitation — would become effective under the terms of the Constitution.” - ,
In State v. Alden Mills the State attempted to collect back taxes on levies for additional corporation franchise. In applying the three year prescription of Article XIX, Section 19, Constitution of 1921, the court held claims which were over three years old when the provision became effective were immediately barred and -claims which were not then three years old successively be,cam,e barred as they .reached such age.' Whether this ruling could be applied- in the instant case we do not say.Prior to the 1938 amendment there was no prescription on back corporation franchise taxes. This was not 'true as to inheritance taxes. Manifestly, the limitation provided in-Act 82 of 1924 was then in effect. It follows, therefore, that unless there has been a. waiver of- the- right to plead prescription by the applicants, as contended-for by the State; the inheritance taxes assértedly due' were prescribed after the lapse of-'three; years from December 10, 1938, which, was the effective "date of the Constitutional amendment, Act 35 of 1938.
The State, however, contends that applicants have lost their right, if any existed, to plead the prescription of three years against the payment of any inheritance taxes because by invoking the rule upon the inheritance tax collector to determine what taxes were due, if any, the applicants thereby acknowledged the existence of the taxes which it, sought to have adjudicated .and thereby waived and, renounced any right they had to prescription qf three years. Counsel for the State point to certain articles of the LSA-Civil Code which have application to a renunciation of prescription. Article 3460 provides, that it is lawful to renounce prescription when once acquired and Article 3461 declares that the renunciation may be either express *222 or tacit. These articles have been repeatedly construed by the courts. It is clear that renunciation of prescription only takes place when the intention to renounce the prescription is manifest either from the words or the acts of the debtor. Such an acknowledgment must be clear, direct ■ and absolute. See H. J. Cottam & Co., Inc., v. Raphael, La.App.1940, 198 So. 513. An examination of the pleadings instituted on behalf of applicants to have the inheritance taxes determined are qualified by the words: “if ' any is 'decreed to be •due”. These words appearing in the pleadings waive no legal rights and cannot be interpreted as an acknowledgment taxes were due. There is no waiver ofi prescription or any other legal right involved. It was simply a proceeding to have certain 'legal issues settled. We, therefore, find that there was no renunciation of the right to plead prescription.
In view of the above findings, it is our opinion that the plea of' prescription of 'three years under Article XIX, Section 19 of the Louisiana Constitution should have been sustained. In view of this finding, •it is unnecessary to consider the evidence .adduced for the purpose of determining the amount of tax.
It is, therefore, ordered, adjudged and decreed that the plea of prescription of three years as fixed by Article XIX, Section 19 ■of the Louisiana Constitution of 1921 and LSA-R.S. 47:2422 be sustained and it is further ordered that there be judgment herein decreeing the estate of Mrs. Eloise McFarland Weltner Brower to be free of ■the payment of all state inheritance taxes'.
In view of our ruling the applicant heirs shall not be required to pay the court costs which have accrued in connection with the rule upon the tax collector. We are mindful the State is relieved of all costs except stenographer’s costs under the provisions of LSA-R.S. 13:4521. The .State is, therefore, taxed with the stenographer’s costs.