84 So.2d 191

**SUCCESSION of Mrs. Eloise McFarland**

**Weltner BROWER.**

No. 42455.

Nov. 7, 1955.

Rehearing Denied Dec. 12, 1955.

Fred S. LeBlanc, Atty. Gen., Carey J. Ellis, Sp. Atty., Rayville, for Inheritance Tax Collector.

McIntosh, Hester & Gilfoil, Lake Providence, for plaintiffs, appellees and respondents.

FOURNET, Chief Justice.

These consolidated cases are before us on certiorari granted the state in order that we might review the judgments of the Court of Appeal for the Second Circuit reversing the lower court and holding that the claim of the state for inheritance taxes levied against the forced heirs of Mrs. Eloise McFarland Weltner Brower (who died in 1925) and her husband, David McCoy Brower (who died in 1928), prescribed under the 1938 amendment to Section 19 of Article XIX of the Constitution of 1921, LSA, providing that "all taxes and licenses, other than real property taxes, shall prescribe in three years from the 31st day of December in the year in which such taxes or licenses are due."

The trial judge, in overruling the plea of prescription, expressed the opinion this provision governed taxes payable on a fixed date and could, therefore, have no application to inheritance taxes since they

are not payable on a fixed date but only after proper proceedings and judgment of court. The appellate court reversed this ruling and sustained the plea on the theory that, applying and attaching to the word "due" its ordinary meaning, the inheritance taxes became due at the date of death, even though the amount was then unknown, since it was, at that moment, "owed or owing as a debt." See, 80 So.2d 217 and 222.

We disagree with the conclusion of the learned trial judge that the 1938 amendment applies only to those taxes that are currently due without the necessity of court procedure, for the amendment specifically provides that "all taxes * * * shall prescribe," and there is only one exception, i. e., real property taxes. This leaves for our consideration the sole question of when inheritance taxes become *due*.

The heirs contend the inheritance tax, if any, was *due* immediately upon the death of their mother and father, and, accordingly, that all claims of the state therefor prescribed under the 1938 amendment three years from December 31 of the year in which they died. They contend, alternatively, that these taxes became due six months after death inasmuch as Act 127 of 1921, LSA-R.S. 47:2401 et seq., authorized the tax collector to institute proceedings to have the tax fixed by court upon the failure of the executor, administrator, or heir to do so within six months of death, and also provided that any tax found to be due should bear interest beginning six months after death.

The state, on the other hand, contends the word "*due*" in this amendment must be considered and construed in connection with the particular type of tax under review and the statutory provisions relative thereto, and, consequently, that the prescriptive period did not begin to run at the moment of death, or six months thereafter, but, instead, from the opening of the succession in 1949 under Act 82 of 1924,[1] the act in effect at the time of the death of Mr. and Mrs. Brower, and that the 1938 amendment merely had the effect of reducing the prescriptive period from five to three years. The state argued, further, and alternatively, that the tax could not be due at the moment of death, and/or six months thereafter, for the reason that an inheritance tax, unlike an estate tax, is a tax on the privilege of the heir to take the legacy or donation left him, and the amount of the tax cannot be due until the value of the property he is to receive has been judicially determined and the tax

---

1. Act 82 of 1924, which was not repealed until the adoption of the LSA-Revised Statutes in 1950, provided that "all actions for the recovery of inheritance taxes due the State * * * shall prescribe by the lapse of * * * five years against the heirs of any deceased persons, starting from the date of the opening of the Succession of said deceased person in one of the Courts of this State."

computed after allowance for all legal exemptions and deductions; further, that the heir is not entitled to take such property until he has accepted the legacy or succession and been legally put in possession thereof by order of court after he has paid the tax as thus judicially fixed.

The legislature of 1921, pursuant to Section 7 of Article X of the 1921 constitutional provision that "Taxes upon inheritances, legacies and donations, or gifts made in contemplation of death, may be graduated, classified or progressive", adopted Act 127 [2] imposing such a tax upon the heir, donee, or legatee, as the case may be, predicated upon the value, as of the time of death or donation, of the inheritance, legacy, or donation, and upon the relationship or want of relationship of the particular recipient to the decedent or donor. This act also details the procedure to be followed in having the amount of the tax judicially determined.

While the act implies the succession must be opened by the proper parties (executor, administrator, or heir) within six months from the date of death, failing which the tax collector is authorized to file the proceedings to have the tax fixed, a study and analysis of this entire legislation leaves the inescapable conclusion that until the amount the legatee, heir or donee is to receive is judicially determined and the tax thereon fixed after due consideration to the deductions and exemptions allowed by law (which are dependent upon the relationship of the recipient to the benefactor), the tax is not due and payable, because until then it is not known if the tax is, in fact, due, or the amount thereof.

The act makes it unlawful for any heir to be in possession, or to dispose, of any part of the inheritance until he shall have secured authority from the court for such possession, Section 3, –R.S. 47:2413, and

2. It is interesting to note that prior legislation on this subject had a long and a troubled history. Act 95 of 1828, the first statute levying an inheritance tax in Louisiana, was repealed by the acts of 1830 (page 76), revived by the acts of 1836 (page 146), and, in slightly altered language, incorporated in acts 154 of 1842, 194 of 1850, and 315 of 1855. The provisions remained in this condition until preserved in Articles 1221, 1222, and 1223 of the Civil Code of 1870 and incorporated in the Revised Statutes of 1870 as Sections 13, 1113, 1470, 3345, 3346, 3683, and 3684. Without mention of the other sections of this revision, Act 86 of 1877 specifically repealed Sections 3683 and 3684 as well as the codal articles, the latter being re-enacted by Act 130 of 1894 only to be held unconstitutional in 1897, Succession of Givanovich, 50 La.Ann. 625, 24 So, 679, and Succession of Sala, 50 La.Ann. 1009, 24 So. 674, because, although a revenue measure, the act had originated in the senate and not in the house. These provisions were never thereafter reenacted, all subsequent legislation on the subject, prior to the 1921 constitution and act, being in conformity with Sections 235 and 236 of the Constitution of 1898, i. e., Acts 45 of 1904, 109 of 1906, 42 of 1912, and 51 of 1918. See, Succession of Rixner, 48 La. Ann. 552, 19 So. 597, 32 L.R.A. 177.

no legacy shall be delivered "until the tax thereon shall have been fixed and paid". Section 10, –R.S. 47:2408. Moreover, once the tax has been fixed by the court, the heir is given 30 days within which to pay it, the tax collector being authorized, thereafter, to obtain court order for the sale of the property so that the proceeds may be applied to the payment of the tax so fixed. Section 9, –R.S. 47:2408.

The mere fact that in Section 24, –R.S. 47:2420, provision is made for the payment by the heir, donee, or legatee of one per cent per month on the tax levied, beginning six months after death, and two per cent per month beginning twelve months after death, does not have the effect of fixing the date upon which the inheritance tax is due, but is merely a penalty imposed upon the heir, donee, or legatee for failing to promptly institute proceedings to have the exact amount due judicially fixed and to pay the same. This is evidenced by the further provisions in this same section to the effect that (1) the heir, donee, or legatee may stop "the running of interest against him by paying the amount of his tax with accrued interest, *estimated or ascertained*, or by tendering the same to the tax collector in the manner prescribed by the general law"; (2) the interest will be remitted in those cases in which the settlement of the succession is bona. fide contested, and when it is

shown that the beneficiary was ignorant of the inheritance. (Emphasis supplied.)

It is our conclusion, therefore, that all inheritance taxes imposed by Act 127 of 1921 under the constitutional authorization of that year, were not due until final judgment of court fixing the amount payable.

The record shows that Mrs. Brower died November 17, 1925, and that her husband died July 9, 1928. But the heirs did not institute these proceedings until September 16, 1949, at which time they ruled the sheriff to show cause "why the inheritance taxes, if any there be, owing by the" heirs "should not be fixed by the court." They did not file their prescriptive plea until June 8, 1951, after the tax collector questioned the value placed on the property in the succession by the heirs· in the affidavit filed by them.[3] Clearly, therefore, the plea of prescription is without merit, as the judgment rendered by the district court on June 24, 1954, has never become final, due to the appeal to the Court of Appeal for the Second Circuit, which is now before us for review.

Under the plain provisions of Section 11 of Article VII of the Constitution of 1921, as contended by the state, we are, in a case ordered up on a writ of certiorari to the courts of appeals, given the same power and authority in the case "as if it had been carried directly by appeal"

3. The sheriff had discovered the property was listed at an amount less than the assessed value at the time of death, as reflected by the rolls.

to this court. However, as pointed out in Mataya v. Delta Life Ins. Co., 222 La. 509, 62 So.2d 817, we deem it the better practice in those cases ordered up for the determination of a matter of law, to remand it to the appellate court where that court has not had the opportunity, or has found it unnecessary, to review the merits of the case while before it.[4] The case will, therefore, be remanded for the purpose of having the Court of Appeal for the Second Circuit review the findings of the district court as to the amount of inheritance tax due and render such judgment as is found to be appropriate.

For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is reversed, the plea of prescription is overruled, and the case is remanded to the Court of Appeal for the Second Circuit for further proceedings consistent with the views herein expressed. The costs in this court are to be taxed against the defendant heirs, the respondents in this court.

McIntosh, Hester & Gilfoil, Lake Providence, for plaintiffs, appellees and respondents.

FOURNET, Chief Justice.

The issues presented for our determination in this case are identical with those raised in the companion case of Succession of Brower, La., 84 So.2d 191,[1] No. 42455, with which it was consolidated for trial, and the decision in that case is, therefore, controlling here.

For the reasons assigned in Succession of Brower, La., 84 So.2d 191,[1] No. 42455, handed down this day, the judgment of the Court of Appeal for the Second Circuit is reversed, the plea of prescription is overruled, and the case is remanded to the Court of Appeal for the Second Circuit for further proceedings consistent with the views herein expressed. The costs in this court are to be taxed against the defendant heirs, the respondents in this court.

84 So.2d 194

#### SUCCESSION of David McCoy BROWER.

No. 42456.

Nov. 7, 1955.

Rehearing Denied Dec. 12, 1955.

84 So.2d 195

#### STATE of Louisiana

v.

#### Horace PEREZ.

No. 42334.

Nov. 7, 1955.

Rehearing Denied Dec. 12, 1955.

---

4. In all of the cases relied on by the state, Pipes v. Gallman, 174 La. 257, 140 So. 40; Wylie v. Shreveport Railways Co., 176 La. 193, 145 So. 513; and Robichaux v. Realty Operators, 195 La. 70, 196 So. 23, the appellate court had reviewed the merits of the case on the facts before the writ was granted.

1. 228 La. 785.