HARDY, Judge.
This case is now before us in accordance with judgment of the Supreme Court remanding the case to this court for judgment on the merits of the appeal, 228 La. 785, 84 So.2d 191.
The history of this case, and a companion suit with which it has been consolidated for trial and hearing through the trial and appellate courts, comprehends almost every character of continuance, delay, postponement, trial, retrial, appeal and remand known to our procedural law, and, though numerous ramifications concern details of some interest, we do not perceive that the relation thereof would provide any substantial or material benefits to the development and determination of the issue to which the matter has been finally reduced.
This proceeding was instituted' by the heirs of Eloise McFarland Weltner Brow-er, wife of David McCoy Brower, by petition filed September 16, 1949, in which 'the heirs of the decedent, alleging that no inheritance tax on the succession of their deceased mother was due the State, prayed to be placed in possession of the property belonging to the decedent’s estate.
Eventually, in answer to the rule, opposition was made to petitioners’ application by the attorney appointed to represent the Sheriff and Ex-Officio Inheritance Tax Collector for the Parish of West Carroll. On appeal to this court, from a judgment fixing an inheritance tax, we sustained a plea of prescription filed on behalf of the applicant heirs, La.App., 80 So.2d 217. The Supreme Court granted writs and rendered judgment reversing the judgment of this court, overruling the plea of prescription and remanding the case for the purpose of determining and fixing any tax which might be due, 228 La. 785, 84 So. 2d 191.
Eloise McFarland Weltner Brower died November 17, 1925, leaving as succession property only her interest in the community estate existing between herself and her surviving husband, David McCoy Brower, who died July 9, 1928. On September 16, 1949, the five children and sole heirs of the named decedents filed applications in the Fifth District Court of West Carroll Parish seeking to be recognized and placed in possession of the respective successions of their deceased parents, and, in connection with such applications, alleged their acceptance of the succession purely, simply and unconditionally. A rule against the Inheritance Tax Collector was sought and issued for the purpose of determining and fixing the amount of inheritance taxes, if any, which might be due the State of Louisiana on the estates of the decedents.
In connection with the original application petitioners attached sworn lists of properties and values thereof. Prior to the appointment of special counsel who represents the Inheritance Tax Collector, the Judge of the District Court noted that certain valuations were fixed in the applicants’ sworn statement in amounts less than the assessed valuation of the properties at the time of the death of the decedent and declared that he would not sign a judgment fixing any valuation at a figure less than the assessment. Whereupon applicants withdrew their original statement and substituted another based upon the assessed valuations. In the further course of the proceedings the minutes show entry of the following order of court:
“It is ordered that this case be and it is hereby re-opened for the reason that the evidence is insufficient, incomplete and conflicting to such an extent that a proper judgment cannot be rendered, and for the further reason that a casual examination of the public records in the Clerk’s Office disclose much information necessary to the determination of this case.
“It is further ordered that the Clerk produce and file in the record all suits for or against D. M. Brower; all deeds, to or from D. M. Brower; all mortgages to or by D. M. Brower, with dates of cancellation of notes; all chattel mortgages to or by D. M. *180 Brower, with dates of cancellation of'" notes; all crop liens'or privileges to or 'by D. M. Brower, with dates of cancellation; all assessménts of personal property; and all notes of kny kind to or by D. M. Brower.1 All of the above information to cover the period-from January 1, 1912, to January 1, 1929.”
Responsive to the above order the clerk prepared and filed certified copies of a large number of instruments of the character designated in the order, which make up. some- 250 pages, more or less, of the voluminous record now before .the court. We find that, with few exceptions, none of the documents were introduced and admitted in evidénce, nor do we find that they constitute any material or relevant evidence in connection with the issue under examination.
In the interest of clarity we wish to observe at this point that the only issue which is before us for consideration involves the determination'of the property and value thereof belonging to the succession of decedent upon the date of her death, November 17, 1925, for the purpose of fixing the inheritance tax thereon due and payable by the heirs of decedent. In this connection we further comment on the extreme difficulty, which is evident from consideration of this record, of fixing with any accuracy or certainty, whatsoever, either the identification or the value of properties after the lapse of approximately 25 years.
Some time subsequent to the filing of petitioners’ application, the Honorable Carey J. Ellis, Jr. was appointed as attorney for the Inheritance Tax Collector, and, upon motion by counsel for applicants, the Honorable C. J. Ellis, Judge of the Fifth Judicial District Court recused himself and appointed Honorable Frank Voelker, Judge ad hoc.
The learned judge ad hoc, taking into consideration the two' sworn statements of valuation of properties and valuation fixed by applicants, together with the testimony adduced and evidence admitted on trials, and in further consideration of an order entered folio,wing a pre-trial conference, fixed the value of the decedent’s one-half community interest as- follows:
1. Total real estate $55,255.00
2. Personal property 2,630.00
3. Mortgage and vendor’s lien mortgage notes described in pre-trial conference.order entered November 12, 1952 ■ ■ 9,143.8£j
4. Checking account in bank at • Oak Grove, Douisiana 800.00
Total community estate . $67,828.88
, Decedent’s one-half interest 33,914.44
Less funeral expenses 500.00
Net estate of decedent $33,414.44
Upon the basis of the above recapitulation of properties and valuations, after making allowances for the exemption of each of the applicant heirs to the extent of $5,000, the taxable value of the interest-of each heir was determined as being $1,682.89, and judgment was rendered against each heir for a tax of $33.66 with legal interest thereon from date of September 16, 1949, until paid, together with all costs.
Counsel for the Inheritance Tax Collector urgently contends that the following items and values should be added,- as follows:
“A. Bank account proven by W. P. Crawford $23,000.00
B. Items - - omitted by pre-trial .order 2,401.59
C. Annual farm rental 1,000.00
$26,401.49”
The contention for the allowance of the above items would serve to raise the total value of the estate from the figure of $67,828.88 allowed by the court to a figure of $94,230.47.
We proceed to a discussion, seriatim, of the items above set forth.
*181 Counsel contends that the existence of a' cash asset of $23,000 was “proven” by. the testimony of one W. P. Crawford which was taken on the .second trial -of the case on November 7, 1952. The witness was president of the Macon Ridge National Bank between the years 1917 to-1932; was personally acquainted with D. M. Brower, who was a depositor of the bank, and testified that he had a distinct recollection of one particular transaction as the result of which the said D. M. Brower placed on deposit in the named bank a sum of some $22,000 to $24,000,-represented by draft on a bank in Lake Village, Arkansas. ,Mr. Crawford testified that this deposit was made sometime “prior to 1927” becapse he- recalled that the money was used, together with additional sums borrowed by Mr. Brower, during the flood of 1927 for the purchase of cattle. Counsel contends, upon the basis of this testimony, striking an average between the figures given by the witness, that the sum of $23,000, representing cash on hand, should be added to the estate of Mrs. Brower, who died November 17, 1925. The only possible support for this position-which we find after careful examination of the testimony of the witness, Crawford, lies in the following question and answer:
“Q. Had the money been on deposit there as much as a year? A. It may have been two years. I couldn’t swear to it.”
We cannot conceive that this equivocal statement, based solely upon a sketchy recollection after the lapse of 25 years, serves to provide, even under the most liberal interpretation, that degree of certainty which is required as a predicate for acceptance as proof. Such a conclusion would necessitate a holding that because a certain indefinite sum of money was deposited in a bank and was used in a given year by the depositor that the deposit was made 18 months before it was used. In other words, counsel asks us to hold that money was on deposit in a certain bank on November 17, 1925, because the money was used sometime during 1927 and, according to the testimony of this witness, the deposit may have been in existence two years, before- it- was- actually used by the depositor. -We think the acceptance of such a contention would do violence to every reasonable rule of evidence and -would be equivalent to the acceptance of conjecture, speculation •’ and supposition. It follows-that,' in our opinion, the’ allowance of this* item was correctly rejected by the trial judge.
A similar contention was made with reference to the items under (b) as set forth above. These items consist of payments made.by debtors on four real estate mortgage obligations and five chattel mortgage and crop lien debts, which nine items vary in amount from $33 to $900 and make up an aggregate of $2,401.59. Counsel urges that these amounts, received within a period of one and one-half months immediately preceding Mrs. Brower’s death, must have been on hand at the time of her death and, therefore, should be included in the community estate. The principal basis for this claim is that such sums of money received by D. M. Brower, who was notoriously conservative to the point of being considered “tight-fisted”, would not have been expended within a period of approximately 45 days. This, again, is pure speculation and, at best, mere probability. In lieu of any positive and definite evidence we think the items noted were correctly disallowed.
Finally, and upon much the same basis, counsel seeks the allowance of an annual farm rental, in the nature of crop shares, estimated at $1,000. Again we observe that there is no positive evidence of any nature or degree with reference to the existence of this estimated amount as an asset of Mrs. Brower’s estate at the time of her death.
Thorough consideration of the intricate details reflected by the record before us fails to demonstrate any error on the part of the judge ad hoc in his determination of the assets and values chargeable to the decedent’s estate. It is pertinent to observe that our brother of the trial court was in a' much more advantageous position to make *182 these determinations as the result of firsthand impression than are we who are confined to the examination of a confusing welter of claims and counter-claims which have been made more obscure by the passage of more than a quarter of a century of time. We are both sensible of and sympathetic with counsel’s claim that these uncertainties and obscurities are chargeable to the laches of these heirs in their inexcusable delay with respect to the opening of this succession, but laches, by itself, is not a substitute for proof.
Industrious counsel finally argues that the burden of proof in a proceeding of this nature lies upon the taxpayer, citing that portion of LSA-R.S. 47:2406 reading as follows :
“The burden of proving facts establishing exemptions from the tax imposed by this Part is upon the person claiming the exemption.”
Unquestionably, the burden above defined would be appropriate with reference to exemptions claimed as against assets established as having existed at the time of death. Since, according to our view, the State has failed to establish by acceptable proof the existence of the assets contended, it follows that there is no obligation upon the applicants from which they are required to discharge themselves by any proof whatsoever.
The final issue which is tendered for determination involves the question of the allowance of penalties under the provisions of LSA-R.S. 47:2420, providing for interest on delinquent taxes at the rate of 1% per month beginning six months after date of death and 2% per month beginning 12 months after date of death. The facts in the instant case are somewhat similar to those involved in Succession of Bolan, 158 La. 911, 105 So. 10. In the cited case the wife predeceased her surviving spouse in community by some fourteen years and upon the death of the husband the heirs opened the successions of both parents. The contention was made that the tax on the succession of the decedent wife was delinquent and the penalty interest thereon should be imposed. The lower court refused the penalty, which action was affirmed by the Supreme Court on the ground that the inheritance from the mother represented nothing more than the naked ownership of an undivided interest in the property belonging to the community. This ruling has been accepted by counsel for respondent tax collector in the instant case, who further concedes that the fixing of inheritance taxes has been highly contested since the filing of petitioners’ applications on September 16, 1949. Accordingly, counsel generously suggests that taxes due be assessed, with penalty interest, only from the date of the death of the husband, D. M. Brower, June 9, 1928, up to the date of the filing of these applications on September 16, 1949. In conformity with this proposal counsel has correctly calculated the. period during which penalty would run. The total elapsed time from June 9, 1928 to September 16, 1949 figures 255 months. Deducting the six-month period immediately following death leaves a total of 249 months during which the penalty interest should be calculated at 1% per month for six months and 2% per month for the remaining period. Reducing these percentage and time factors, the aggregate accrued penalty amounts to 492% of the tax adjudged to be due.
Under the facts of the instant case we are convinced that the imposition of the statutory penalty interest should be allowed and it follows that the judgment must be amended to this extent.
For the reasons assigned the judgment appealed from fixing the principal amount of tax due by each of the applicant heirs in the sum of $33.66 is affirmed, but it is further ordered, adjudged and decreed that the judgment be amended by allowing penalty interest on the principal amount as above set forth, and against each of the heirs to the extent of 492% of said principal in addition thereto, and, as amended, the judgment is affirmed at applicants’ cost.