HARDY, Judge.
This is a companion suit to the matter of the Succession of Brower v. State, No. 8262 on the docket of this court, with which it was consolidated for purposes of trial and appeal. The material facts involved in the two cases are substantially the same and, for an exposition thereof, we refer to the opinion in the case of Succession of Brower v. State, 87 So.2d 178.
This matter presents an appeal by respondent tax collector from judgment of the trial court.
In the judgment of the district court, decreeing the heirs of decedent to be free from liability for any inheritance tax, the taxable assets of the estate and the values fixed thereon were listed as follows:
“Real estate and Personal Property described in Sworn
List: $13,200.00
Mortgage notes described in Pre-Trial Conference order dated Nov. 12, 1952 10,186.38
Total estate of decedent $23,386.38”
On behalf of the respondent tax collector it is urged that additional items of property, valued at something in excess of $28,000, should be added to the assets of the estate. We propose to discuss each of these items as briefly as may be reasonable.
Counsel' for appellant urges that the sum of $24,799.16 should be added to the assets of the estate, representing an original investment of $25,000 less an indebtedness to the Macon Ridge National Bank in the *184 sum of $220.84, which net amount was invested in the purchase of cattle. It is true that the testimony of W. P. Crawford, to which more detailed reference.is made in our opinion in the Succession of Brower v. State, and the testimony of R. E. Brow-er, a son of the decedent and one of the applicant heirs in this proceeding, established the fact that D. M. Brower was actively engaged in the purchase and sale of cattle in 1927 and 1928. Apparently there was some joint venture between Brower and one H. S. Sims, and, unquestionably, Brower invested a considerable amount of money in the purchase of several hundred head of- cattle. However,, the testimony utterly fails to establish either the ■ existence of the cattle or of any monetary proceeds from the venture as of the time of Brower’s death on June 9, 1928. It appears from the testimony of R. E. Brower' that his father and Sims made what he termed a “clean-up” sale of the cattle to some residents of Texas at a profit of $2,500. However, this witness, with further relation to the cattle deal, narrates such a vague, rambling and confusing story that wé find it impossible to reach any definite conclusion' as to the actual result of the undertaking. The fact re-mainfe that there is no evidence which es-' tablishes the ownership of the “several hundred head of” cattle at the time of D. M. Brower’s death. The heirs included in the listed and- Strom assets of' the estate 160 head of cattle at a total value of $6,-400. Nor is there any' evidence which serves to justify a conclusion as -to the existence of cash proceéds from the cattle deals as of the time -of Brower’s death. The justification for any increase in the assets of the estate due to this item would of necessity rest upon pure speculation and it could as easily be speculated, and possibly with more reason; that Brower and Sims actually lost money on the venture. In any event, the vague and' flimsy evidence adduced in support of respondent’s contention on this point is completely inadequate and.we think this item was correctly disallowed.
The, .next item urged by learned counsel for respondent is identified as:
“H. S. Sims Chattel Mortgage paid four days before his death $2,000.00”
It is evident the above item refers to a payment of $2,000 assertedly received four days prior to the death of D. M. Brower. The chattel mortgage and note of H. S. Sims dated June 9, 1927, in the amount of $2,000 was filed in evidence, and reference to the reverse side of the note discloses the following:
“Cr 3 Head T cattle
“ “ Head cattle
Total credit 152.00
Dec. 29-1927
Rec’d
Interest 88.86
Principal 63.14
June 5-1928
Rec’d
Interest 67.14
Principal 1,932.86”
Counsel urged that the sum of $2,000 received by D. M. Brower on the Sims note only four days before his death should be included in the assets of his estate. We do not follow the logic of this reasoning. To begin with, it is-not shown that the credit was represented by the payment of money, nor is it established that if the amount was paid in money it was not expended nor applied to the discharge of indebtedness. On the other hand, the un-contradicted testimony of R. E. Brower is that he came to Louisiana in August following his 'father’s death in June and -assumed the- administration of the affairs of the estate under the authority of a power of attorney from his co-heirs. This witness testified that, he - did not know of any money or cash on hand or on deposit, with the exception of possibly something in excess of $800 in the Macon Ridge National Bank, which was applied to indebtedness owed by his father to the bank.. We further observe, in passing, that, this witness testified as to the existence of other debts by his father’s estate, which debts were-subsequently. discharged, notably a personal debt in his own fayor-in -the -exact, sum, according to his testimony, of $7,- *185 792.07, which was paid. It is only reasonable to assume that these debts would have been included by the heirs in the reduction of the net value of their father’s estate if the same had been necessary. Again we are convinced that the evidence fails to establish the existence, as of the date of D. M. Brower’s death, of any sum paid on the Sims note as an asset of the estate, and, accordingly, we conclude this item was correctly disallowed.
The remaining items in this category which are sought to be added to the taxable assets of the estate are listed by counsel for respondent as follows:
“Whippet automobile assessed on 1928 assessment sheet $500.00
Richland Parish 40 acres attested to by R. E. Brower 800.00
M. Vining open account collected by R. E. Brower 100.00”
We think these items have been established as constituting assets of the estate, and since this showing has not been controverted by any testimony or evidence on the part of the heirs, they should be added to the total gross assets of the basic estate. This allowance would have the effect of increasing the total value of the estate, as fixed in the Judgment, in the sum of $1,400, which would bring the valuation of decedent’s total estate to the amount of $24,786.38.
Finally, zealous counsel for the Inheritance Tax Collector vigorously attacks donations of real estate made by the dece: dent to his children prior to death. It .is established that some few months following the death of his wife on November 17, 1925, David McCoy Brower made donations. to his children of the bulk of his real estate located in Louisiana, Kansas, Texas and Nebraska. The Louisiana properties were conveyed to his daughters, Mrs. Ruby Hurt (now Mrs. McDowell) and Mrs. Edith Gowan, by acts of donation executed March 25th and July 10, 1926, respectively. Counsel urges that these donations, although made more than one year prior to death of the donor, are subject to inquiry as being made in contemplation of death, which contention is based upon the wording of LSA-R.S. 47:2406, providing:
“Donations and transfers prior to one year of death may be always inquired into and if shown to have been made in contemplation of death and in avoidance of taxes, then the same shall be likewise liable to the tax.”
There is no question as to the correctness of this position, but neither is there any question as to the correctness of the conclusion that there is not the slightest evidence in this record which would justify a holding that the donations in question were made, in the words of the statute, “in contemplation of death and in avoidance of taxes”.
The attack upon these donations has been strenuously resisted by counsel for the heirs on the ground that the inquiry into the validity of these donations was vulnerable to objection in that it went heyond the pleadings and had the effect of enlarging the same. We do not regard this objection as being entitled to serious consideration in view of the fact that the testimony with reference to the donations in question was received without objection and, therefore, had the effect of enlarging the pleadings to the extent of the testimony, received. But, in any event, we think th.is point is unimportant in view of our finding, as above stated, that respondent has failed to establish the donations- as having been in contemplation of death and in avoidance of taxes.
Finally, the donations are attacked as being invalid in point- of form, and it is urged that they are incomplete and deficient for want of formal acceptance and for other informalities. We do not think such errors of form are subject to collateral attack in a proceeding of this nature. It is not -within the province of the State to question the validity and effect of the acts themselves since its interest is limited, exclusively, to a consideration as to the purpose of the donations, that 'is, whether made in contemplation of death.
*186 Recapitulation of the effect of our consideration of all of the items and issues above discussed leads us to the conclusion that the total estate of the property belonging to the Succession of David McCoy Brower as of the date of his death on June 9, 1928, should be fixed in the amount of $24,786.38. However, in view of the exemption of $5,000 to which each of .the five heirs is entitled, it follows that no inheritance tax would be due and that the judgment appealed from is correct.
For the reasons assigned the judgment appealed from is affirmed.